Argued and submitted January 10, decision of the Court of Appeals and judgment of the circuit court affirmed in part and reversed in part, and case remanded to the circuit court for further proceedings July 18, 1996

Virginia KILMINSTER,
Curtis Irwin, Sr.,
and Curtis Irwin, Sr.,
as personal representative of
the Estate of Curtis Irwin, Jr., (the decedent),
*Petitioners on Review,*

*v.*

DAY MANAGEMENT CORPORATION,
an Oregon corporation,
dba Clackamas Communications,
and Gordon Day,
*Respondents on Review,*

*and*

KSGO/KGON, INC.,
a Washington corporation;
Motorola, Inc.,
a Delaware corporation;
Skilling Ward Magnusson Barkshire, Inc.,
a Washington corporation,
*Defendants.*

(CC 9301-00574; CA A82220; SC S42217)

919 P2d 474

Tom Steenson, of Steenson & Schumann, P.C., Portland, argued the cause for petitioners on review. With him on the briefs was Zan Tewksbury.

Larry K. Amburgey, Portland, argued the cause for respondents on review. On the briefs were Howard Rubin and Patricia Ann Haim, Portland.

Richard S. Yugler, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Jerald P. Keene, of Roberts, Reinisch, MacKenzie, Healey & Wilson, P.C., Portland, and Chess Trethewy, of Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C., Salem, filed a brief on behalf of *amicus curiae* Associated Oregon Industries.

Jonathan M. Hoffman and Julie K. Bolt, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

James W. Moller, Special Assistant Attorney General, with Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem, filed a brief on behalf of *amicus curiae* SAIF Corporation.

Jackie Sanders, Portland, filed a brief on behalf of *amicus curiae* Fred Tyacke.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Graber, and Durham, Justices.**

GRABER, J.

Durham, J., concurred in part and dissented in part and filed an opinion.

---

** Fadeley, J., did not participate in the consideration or decision of this case; Unis, J., retired June 30, 1996, and did not participate in this decision.

## GRABER, J.

This is an action involving claims for negligent wrongful death, intentional wrongful death, and violation of the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO), brought against decedent's employer and that employer's president.

The individual plaintiffs are decedent's parents. Decedent's father is the personal representative of decedent's estate and is a plaintiff in that capacity. Decedent was an employee of defendant Day Management Corporation (DMC). Defendant Gordon Day is the president of DMC.

The case comes to us on review of a trial court's grant of defendants' motion to dismiss three of plaintiffs' claims. Accordingly, we assume the truth of all well-pleaded facts alleged in the complaint and give plaintiffs the benefit of all favorable inferences that may be drawn from those facts. *Stringer v. Car Data Systems, Inc.*, 314 Or 576, 584, 841 P2d 1183 (1992). Plaintiffs allege, as pertinent:

• On January 6, 1992, decedent died in the course and scope of his employment with DMC, when he fell 400 feet while working on a radio tower. Before his death, decedent frequently had complained to DMC about the inadequate equipment that he was forced to use when climbing. Decedent was apprehensive about climbing with the equipment that DMC had provided, and he had asked that he not be required to climb anymore. DMC refused that request and, according to the complaint, told decedent "to climb or leave his employment."

• DMC deliberately did not provide its workers, including decedent, with legally required safety equipment. DMC deliberately did not instruct decedent and its other workers how to use legally required safety equipment, how to engage in safe work practices, or how to follow state fall-protection regulations. DMC encouraged its workers not to use available safety equipment and not to take legally mandated safety precautions. DMC refused to develop a system or plan to ensure the safety of its workers at the tower or to provide adequate supervision to ensure the safety of those workers.

As a result of DMC's actions, those workers were not adequately protected from fall, injury, and death.

● DMC knew, before decedent's death, that if it did not provide the workers in decedent's work location with the requisite safety equipment and training, a worker would fall from the tower and that such a fall would result in serious injury or death.

After decedent's death, plaintiffs filed a complaint against DMC. Decedent's personal representative first alleged that, under ORS 30.020, DMC's negligence had led to the wrongful death of decedent.[1] In the second claim, decedent's personal representative alleged that DMC had acted with a "deliberate intention" to produce decedent's injury or death, within the meaning of ORS 656.156(2), and that decedent, had he lived, would have had cause for action against DMC for its wrongful acts.[2] Plaintiffs also alleged that defendants Day and DMC had engaged in a pattern of racketeering activities in violation of ORICO, ORS 166.715 to 166.735, and that those activities had resulted in decedent's death.

Day and DMC moved to dismiss all three claims, pursuant to ORCP 21 A(8).[3] The trial court ruled that ORS 656.018 was the exclusive remedy for all three claims and that application of that statutory provision was constitutional. The trial court concluded that, as to those three claims, plaintiffs failed to state ultimate facts sufficient to constitute a claim. Accordingly, the trial court granted that motion.[4]

---

[1] Plaintiff describes the first claim as follows: "Plaintiff['s] First Claim alleged DMC's negligence caused decedent's wrongful death."

[2] Plaintiffs did *not* incorporate those allegations into the negligent wrongful death claim or into the ORICO claim, nor did they cite ORS 656.156(2) except in the deliberate-intention (second) claim.

[3] ORCP 21 A(8) provides:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a complaint, counterclaim, cross-claim or third party claim, shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion to dismiss: * * * failure to state ultimate facts sufficient to constitute a claim."

[4] In their complaint, plaintiffs alleged other claims against other defendants. After the trial court granted Day's and DMC's motions to dismiss, the trial court entered a judgment pursuant to ORCP 67 B as to the claims against Day and DMC only. Plaintiffs' other claims against other defendants are not before us.

Plaintiffs appealed to the Court of Appeals, arguing that ORS 656.018 did not bar the negligent wrongful death claim against DMC and, alternatively, that such an application of ORS 656.018 would violate Article I, section 10, of the Oregon Constitution. Plaintiffs also argued that the complaint stated facts sufficient to meet the deliberate-intention-to-injure standard of ORS 656.156(2) and to state a claim against DMC and Day under ORICO. The Court of Appeals affirmed the order of the trial court. *Kilminster v. Day Management Corp.*, 133 Or App 159, 171, 890 P2d 1004 (1995). For the following reasons, we affirm the decision of the Court of Appeals with respect to the negligent wrongful death and ORICO claims but reverse with respect to ORS 656.156(2).

## NEGLIGENT WRONGFUL DEATH

We begin with the negligent wrongful death claim. Plaintiff[5] argues that the exclusivity provision of the Workers' Compensation Act, ORS 656.018, does not preclude a wrongful death claim brought under ORS 30.020 and that, if ORS 656.018 were read to preclude that claim, such a reading would violate Article I, section 10, of the Oregon Constitution.

ORS 656.018 provides in part:

"(1)(a)  The liability of every employer who satisfies the duty required by [the Workers' Compensation Act] is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom * * *.

"* * * * *

"(2)  The rights given to a subject worker and the beneficiaries of the subject worker under this chapter for injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment are in lieu of

---

[5] In our discussion of the negligent wrongful death claim and the intentional wrongful death claim, we use "plaintiff" in the singular to refer to the personal representative of decedent's estate.

any remedies they might otherwise have for such injuries, diseases, symptom complexes or similar conditions against the worker's employer under ORS 654.305 to 654.335 or other laws, common law or statute, except to the extent the worker is expressly given the right under this chapter to bring suit against the employer of the worker for an injury, disease, symptom complex or similar condition."[6]

The meaning of that statutory provision, as it relates to the issue in this case, is clear from its text and context. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (describing this court's method of statutory analysis). An employer that satisfies certain duties of the Workers' Compensation Act will be liable for on-the-job injuries suffered by a worker only to the extent that that liability is provided for in the Act itself.[7] A worker who is injured in the course and scope of employment is entitled to receive, from the worker's employer, only the remedies provided for in the Act. *See Nicholson v. Blachly*, 305 Or 578, 581, 753 P2d 955 (1988) ("[t]he exclusive remedy of injured employes against their employers for injuries suffered in the course and scope of employment is to receive workers' compensation benefits"); *Fields v. Jantec, Inc.*, 317 Or 432, 438-39, 857 P2d 95 (1993) (same).

Plaintiff alleges that decedent was injured in the course and scope of his employment and that DMC had satisfied the duties required of it by the Workers' Compensation Act. In other words, plaintiff alleges facts that make ORS 656.018 operative in this case.

ORS 656.018 precludes plaintiff's wrongful death claim based on a theory of negligence. ORS 30.020(1) provides a decedent's representative with the right to bring a

---

[6] The legislature amended ORS 656.018 in 1995. Or Laws 1995, ch 332, § 5. Those amendments became effective on June 7, 1995, *id.* at § 69, and the legislature made those amendments applicable to "all claims or causes of action existing or arising on or after the effective date of" those amendments. *Id.* at § 66(1). Decedent's death occurred before the enactment of those amendments. The 1995 amendments to ORS 656.018 do not alter the wording or meaning of that provision in a way that affects our analysis in this case, however. Therefore, we quote and refer to the current version of ORS 656.018, but nothing in our decision today should be read as deciding whether those amendments apply retroactively.

[7] With respect to the negligent wrongful death claim, plaintiff does *not* rely on ORS 656.156(2) or on the exception clause in ORS 656.018(2).

wrongful death action only *"if the decedent might have maintained an action, had the decedent lived."*[8] (Emphasis added.) A decedent who is injured in the course of the decedent's employment and whose injury is covered under the exclusivity provision of the Workers' Compensation Act could not have maintained an action against the employer had he lived. ORS 656.018 is an explicit limitation on the right of covered employees to bring such actions. ORS 30.020(1), by its own terms, does not give a decedent's personal representative a right to sue the decedent's employer for negligent wrongful death when the decedent never had that right in the first place.

Plaintiff argues that such an application of ORS 656.018 to the wrongful death claim against DMC violates Article I, section 10, of the Oregon Constitution, because "it *takes away* the parents' claim for the wrongful death of their son." (Emphasis added.) We disagree.

Article I, section 10, of the Oregon Constitution, provides in part: "[E]very man shall have remedy by due course of law for injury done him in his person, property, or reputation." Recent cases from this court have addressed whether a statute deprived a litigant of a remedy, within the meaning of Article I, section 10, for a recognized common law or statutory right. *See, e.g.*, *Greist v. Phillips*, 322 Or 281, 290-91, 906 P2d 789 (1995) (holding that a $500,000 statutory cap on the amount of noneconomic damages that a party may recover in a statutory wrongful death action does not deprive that party of a "substantial remedy"); *Neher v. Chartier*, 319 Or 417, 420, 879 P2d 156 (1994) (holding that statutory immunity for public bodies and their officers, employees, and agents in the

---

[8] ORS 30.020(1) provides in part:

"When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's * * * surviving parents * * * who under the law of intestate succession of the state of the decedent's domicile would be entitled to inherit the personal property of the decedent * * * may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission."

ORS 656.156(2) provides that a worker who is injured or killed as a result of the "deliberate intention of the employer * * * to produce such injury or death" may "have cause for action against the employer." That provision is discussed in the text, below. 323 Or at 628-32.

Oregon Tort Claims Act (OTCA) violated Article I, section 10, "because it purports to immunize public bodies from tort liability" and deprives the personal representative of a decedent's estate of a "substantial remedy"); *Hale v. Port of Portland*, 308 Or 508, 523-24, 783 P2d 506 (1989) (holding that the damages limitation in the OTCA as applied to cities and port districts did not violate Article I, section 10). Plaintiff relies on those cases, and especially on this court's decision in *Neher*, as supporting the argument that application of ORS 656.018 to plaintiff's statutory wrongful death claim in this case deprives decedent's parents of a "substantial remedy" in violation of Article I, section 10. Plaintiff's reliance on those cases is misplaced.

■    The Article I, section 10, remedy guarantee is implicated only if a person suffers injury to person, property, or reputation. This court recognized that proposition in *Noonan v. City of Portland*, 161 Or 213, 249, 88 P2d 808 (1939):

> "Article I, § 10, Oregon Constitution, was not intended to give anyone a vested right in the law either statutory or common; nor was it intended to render the law static. Notwithstanding similar constitutional provisions in other states, the courts have sustained statutes which eliminated the husband's common law liability for the torts of his wife and which placed the wife upon an economic level with her husband. They have likewise sustained statutes which have abolished actions for alienation of affections, actions for breach of promise, etc. The legislature cannot, however, abolish a remedy and at the same time recognize the existence of a right."

In recent cases, this court has adhered to the foregoing proposition. *See Neher*, 319 Or at 427 (quoting the above passage from *Noonan* with approval); *Hale*, 308 Or at 521 (same).

■    As explained above, the Workers' Compensation Act does not give decedent or plaintiff a statutory right to bring a negligence-based wrongful death action. Similarly, ORS 30.020 does not provide that right, because it gives a party a right to bring a wrongful death action only "if the decedent might have maintained an action, had the decedent lived." In other words, ORS 30.020 gives plaintiff a *derivative* right; but none of these plaintiffs has an independent basis from which to derive such a right.

The legislature has chosen not to provide decedent's parents with a negligence-based wrongful death action in this case. Because the legislature has chosen not to provide decedent's parents with a wrongful death action based on a theory of negligence, and because Oregon has no common law action for wrongful death, *see Greist*, 322 Or at 294 (so stating), they have suffered no legally cognizable injury to their person, property, or reputation. Therefore, application of ORS 656.018 to this wrongful death action brought under ORS 30.020(1) does not violate Article I, section 10.

*Neher* does not support a different conclusion. In *Neher*, the decedent was killed when she was struck by a Tri-Met bus while she was engaged in activities covered by the Workers' Compensation Act. The plaintiff, the personal representative of the decedent's estate, sought damages against Tri-Met and the bus driver. Those defendants claimed immunity under a provision of the OTCA that granted immunity to the public body and its employees if the person injured or killed was covered by the Workers' Compensation Act. 319 Or at 420-21. This court held that the application of statutory immunity violated Article I, section 10. *Id.* at 428.

The issue presented in *Neher* contained a feature not present in this case. In *Neher*, the OTCA provided immunity to a public body and its employees if the person injured or killed was covered under the exclusive remedy provision of the Workers' Compensation Act. The challenge was to the application of the *OTCA's* grant of immunity to the defendants when those defendants' relationship to the decedent was *unrelated* to the decedent's relationship with her employer; the defendants were not the decedent's employer. In *Neher*, then, the defendants' lack of an employment relationship with the *decedent* precluded the defendants from asserting directly that they were immune from liability under ORS 656.018. In other words, in *Neher*, the challenged grant of governmental immunity was "piggy backed" atop ORS 656.018. Further, because ORS 656.018 was not available to the defendants *vis-a-vis* the plaintiffs, the plaintiffs did not challenge the exclusive remedy bar of ORS 656.018. The scenario in this case, wherein plaintiff's negligent wrongful death claim against decedent's employer is controlled

directly by ORS 656.018, is readily distinguishable from the scenario presented to this court in *Neher*.

Moreover, in *Neher*, the parties did not raise, and the court did not address, the question whether the statutes at issue there gave the plaintiff a derivative (as distinct from an independent) right. Here, that question is before us. As noted, none of the plaintiffs has an independent right to bring a wrongful death action against DMC, and decedent's personal representative has no derivative right.

The trial court did not err in dismissing the negligent wrongful death claim against DMC. The Court of Appeals did not err when it affirmed that ruling.

## DELIBERATE INTENTION TO INJURE

Plaintiff next argues that the trial court erred when it dismissed the second claim for failure to state ultimate facts sufficient to constitute a claim. In the second claim, plaintiff incorporates the allegations of the wrongful death claim and, in addition, alleges that defendants deliberately intended to injure or kill decedent, citing ORS 656.156(2). We interpret the allegations of deliberate intention to injure or kill decedent to serve two functions: first, to allege that the usual bar of ORS 656.018 does not apply to this claim and, second, to allege affirmatively a claim for intentional wrongful death. The only issue brought to us for decision on this claim is the adequacy of the allegations of deliberate intention to injure or kill decedent. We agree with plaintiff's argument in that regard.

ORS 656.156(2) provides in part:

> "If injury or death results to a worker from the deliberate intention of the employer of the worker to produce such injury or death, the worker, the widow, widower, child or dependent of the worker may take under this chapter, and also have cause for action against the employer, as if such statutes had not been passed, for damages over the amount payable under those statutes."

ORS 656.156(2) is an exception to the exclusivity provision, ORS 656.018. ORS 656.156(2) gives a worker who is injured or killed in the course and scope of employment the right to bring an "action against the employer * * * for damages over

the amount payable" under the Workers' Compensation Act if, but only if, the employee's injury or death "results * * * from the deliberate intention of the employer * * * to produce such injury or death."

■ Defendants argue, "[a]s a threshold matter, [that p]laintiff[ ] lack[s] standing to maintain a claim under" ORS 656.156(2), because that statute explicitly gives a right to bring an action under that subsection only to the worker, widower, child, or dependent of the worker. Defendants reason that, because a personal representative is not in any of those listed categories, plaintiff may not maintain this action. That argument is not well taken.

Under ORS 656.156(2), in the event of a worker's death resulting from the employer's deliberate intention to produce such death, "the worker * * * may * * * have cause for action against the employer, as if such [workers' compensation] statutes had not been passed, for damages over the amount payable under those statutes." That statute thus removes the bar that otherwise would prevent a worker from maintaining an action for damages against the employer, even though the worker is dead. Logically, the only party who can pursue that action, and thereby effectuate the substantive right afforded the deceased worker by ORS 656.156(2), is the worker's personal representative. Plaintiff is a person who may bring a claim, the bar to which has been removed by ORS 656.156(2), in the circumstances.

The trial court held that plaintiff failed to allege facts sufficient to state a claim, however. The Court of Appeals affirmed, stating that "[p]laintiff['s] allegations do not meet the stringent test for 'deliberate intent' to cause injury or death under ORS 656.156." 133 Or App at 167. Plaintiff argues that the complaint adequately pleads that DMC deliberately intended to produce decedent's injury or death.

■ Plaintiff's argument requires us to interpret ORS 656.156(2) to determine the meaning of the phrase "result[ing] * * * from the deliberate intention of the employer of the worker to produce such * * * death." Our analysis begins with the text and context of ORS 656.156(2). *PGE*, 317 Or at 610. A prior interpretation of a statute by this

court becomes part of the statute itself, as if it were written into the statute at the time of the statute's enactment. *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995).

The operative wording in ORS 656.156(2) was part of the original Oregon Workers' Compensation Act that was passed by the people in a referendum in 1913.[9] *See* General Laws of Oregon, p 8 (1915) (providing results of referendum vote). That wording has remained unchanged since adoption of the Act—a period of more than 80 years. Accordingly, this court's interpretations of that wording since adoption of the Act control its meaning.

*Jenkins v. Carman Mfg. Co.*, 79 Or 448, 453-54, 155 P 703 (1916), is the first case from this court to interpret the phrase "deliberate intention to produce such injury or death." The court stated:

"We think by the words 'deliberate intention to produce the injury' that the lawmakers meant to imply that the employer must have determined to injure an employee and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross."

This court repeatedly has adhered to that definition. In *Heikkila v. Ewen Transfer Co.*, 135 Or 631, 634, 297 P 373 (1931), the court quoted with approval the definition from *Jenkins* and then said:

"Under our authorities, recovery by a workman of his employer, where * * * recovery is sought in addition to any payment from the accident fund, where the injury results from the deliberate intention of the employer to produce the injury, 'deliberate intention' implies that the employer

---

[9] The pertinent section of the original version of the Workers' Compensation Act provided in part:

"If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the workman, the widow, widower, child or dependent of the workman shall have the privilege to take under this act, and also have cause of action against the employer, as if this act had not been passed, for damages over the amount payable hereunder." General Laws of Oregon, ch 112, § 22, p 204 (1913).

> must have determined to injure the employee. It is not sufficient to show that there was mere carelessness, recklessness, or negligence, however gross it may be. Reckless disregard of the consequence * * * does not charge an intent to injure plaintiff."

*See also Caline v. Maede*, 239 Or 239, 240, 396 P2d 694 (1964) (relying on and applying *Jenkins* and *Heikkila*); *Bakker v. Baza'r, Inc.*, 275 Or 245, 253, 551 P2d 1269 (1976) (stating that "[t]his court has consistently adhered to a strict construction of this statutory exception" and applying the above quotation from *Jenkins*); *Duk Hwan Chung v. Fred Meyer, Inc.*, 276 Or 809, 813, 556 P2d 683 (1976) (quoting the above-quoted passage from *Heikkila* with approval, citing *Jenkins* and *Caline* with approval, and stating, "[i]n order to come within the exception [provided in ORS 656.156(2)] it is incumbent upon the injured workman to establish that his employer had a deliberate intention to injure him or someone else and that he was in fact injured as a result of that deliberate intention").

■    The meaning of the provision at issue in this case is clear from this court's prior interpretations. In order for a worker to show that an injury that occurred during the course and scope of the worker's employment "result[ed] * * * from the deliberate intention of the employer * * * to produce" that injury, the work..r must show that the employer determined to injure an employee, that is, had a specific intent to injure an employee; that the employer acted on that intent; and that the worker was, in fact, injured as a result of the employer's actions.

This court has, on six occasions, considered a claim brought under ORS 656.156(2). In the five cases cited above, the court held that the plaintiffs did not meet the requisite burden of pleading or proof.

Only one case from this court has held that a plaintiff met that burden. *Weis v. Allen*, 147 Or 670, 35 P2d 478 (1934), illustrates what a worker must establish. In *Weis*, the plaintiff brought an action to recover damages from his employer for injuries suffered when he was shot by a spring gun that the employer had set on the employer's property where the plaintiff was working. The plaintiff claimed that

his injuries were a result of the employer's "deliberate intention * * * to produce such injury." The employer appealed from a jury verdict in the plaintiff's favor. 147 Or at 672. This court held that the evidence in the record was sufficient to support the verdict:

> "The record discloses that the guns * * * were so arranged that their contents would be discharged into the person for any one who might come in contact with the wires operating them. This change was made at the insistence and with the knowledge of the defendant, and the guns, set to inflict serious injury, were so maintained by him even after he had been ordered by the police to discontinue their use as dangerous and unlawful. There can be, therefore, no question but that these guns were kept and used by the defendant with the deliberate intention of injuring any one who might inadvertently cause them to be discharged.
>
> "* * * * *
>
> "It was not necessary here to prove that the defendant had singled the plaintiff out and set the gun with the express purpose of injuring him and no one else. The act which the defendant did was unlawful and was deliberately committed by him with the intention of inflicting injury." 147 Or at 680-82.

In this case, plaintiff has alleged facts sufficient to meet the foregoing standard for deliberate intention to injure or kill. Plaintiff alleges that DMC *knew* that decedent or someone who did the same work as decedent *would* be injured from a fall from the tower; that DMC decided to forego taking safety procedures, *knowing* that, by so doing, serious injury or death *would* result; and that DMC told decedent to climb the tower or lose his job. The second claim also cites ORS 656.156(2) and asserts specifically that DMC intended to produce decedent's injury and death:

> "The injury to and death of decedent resulted from the deliberate intention of Defendant DMC to produce such injury and death."

Reading all the allegations together, in the light most favorable to plaintiff, a finder of fact reasonably could infer that DMC determined to injure an employee, that is, specifically intended "to produce [decedent's] injury or death." The

underlying facts pleaded by plaintiff do not describe when or how DMC determined to injure decedent. However, a specific intent to produce an injury may be inferred from the circumstances. *Cf. State v. Elliott*, 234 Or 522, 528-29, 383 P2d 382 (1963) (specific intent to commit a crime is a "subjective fact * * * seldom susceptible of direct proof [and] * * * usually established by a consideration of objective facts, and from th[ose] objective facts an ultimate conclusion is drawn"). Taking all the allegations of the second claim together, plaintiff alleges more than gross negligence, carelessness, recklessness, or conscious indifference to a substantial risk of injury. Plaintiff alleges that serious injury to or death of a worker was *certain to occur*, that DMC failed to take requisite safety precautions or buy requisite safety equipment, and that DMC instructed decedent to climb the tower while *knowing* that a worker who climbed the tower *would* fall and be hurt. A reasonable finder of fact could infer that DMC acted as it did because it wished to injure or kill decedent. A specific intent to injure or kill decedent certainly is not the only state of mind that could be inferred, but it is a permissible inference. We need not consider whether plaintiff can *prove* that defendants had the alleged specific intent to injure or kill decedent; in the procedural posture of this case, we consider only the sufficiency of the complaint.

The trial court erred when it dismissed plaintiff's second claim for failure to state facts sufficient to constitute a claim. The Court of Appeals erred in affirming that ruling.

### ORICO

■ Finally, plaintiffs argue that the trial court erred by dismissing their claim against DMC and Day under ORICO, ORS 166.715 to 166.735. The trial court concluded that ORS 656.018 barred plaintiffs' ORICO claim and, alternatively, that plaintiffs had failed to allege ultimate facts sufficient to constitute a claim under ORICO. The Court of Appeals did not address the applicability of ORS 656.018 to plaintiffs' ORICO claim, but affirmed the judgment of the trial court, concluding that plaintiffs failed to allege ultimate facts sufficient to state a claim. *Kilminster*, 133 Or App at 167-71. We hold that ORS 656.018 bars plaintiffs' ORICO claims. Accordingly, we do not address the sufficiency of plaintiffs' factual allegations.

Plaintiffs allege that defendants[10] engaged in a pattern of racketeering activity[11] and that defendants received proceeds or income resulting from that pattern of racketeering activity, in violation of ORS 166.720(1) to (3).[12] Plaintiffs allege that, "[a]s a result of the prohibited conduct of Defendants DMC and Day under ORICO, [decedent] suffered injury and death."

With respect to the underlying facts, plaintiffs' ORICO claim incorporates by reference the facts alleged in the first claim—the wrongful death claim based on a theory of negligence. Plaintiffs do *not* incorporate by reference the facts alleged in their second claim. That is, in the ORICO claim, plaintiffs do not cite ORS 656.156(2) and do not allege that "[t]he injury to and death of decedent resulted from the

---

[10] Plaintiffs alleged that DMC is an "enterprise," as that term is used in ORS 166.715(2), and that DMC is subject to liability under ORICO. Plaintiffs also alleged that Day was a "person," under ORS 166.715(5), and that Day is subject to liability under ORICO.

[11] ORS 166.715(6)(a)(G) provides:

" 'Racketeering activity' means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit:

"(a) Any conduct that constitutes a crime, as defined in ORS 161.515, under any of the following provisions of the Oregon Revised Statutes:

"(G) 163.160 to 163.205, relating to assault and related offenses[.]"

Plaintiffs assert that defendants engaged in a pattern of racketeering activity by committing acts prohibited by ORS 163.195. ORS 163.195 provides:

"(1) A person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.

"(2) Recklessly endangering another person is a Class A misdemeanor."

[12] ORS 166.720 provides in part:

"(1) It is unlawful for any person who has knowingly received any proceeds derived, directly or indirectly, from a pattern of racketeering activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest or equity in, real property or in the establishment or operation of any enterprise.

"(2) It is unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any real property or enterprise.

"(3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt."

deliberate intention of Defendant DMC to produce such injury and death" or that decedent, had he lived, would have had cause for action against DMC for its wrongful acts.

In the first claim, plaintiff alleges that serious injury to or death of a worker was certain to occur, that DMC failed to take requisite safety precautions or buy requisite safety equipment, and that DMC instructed decedent to climb the tower while knowing that a worker who climbed the tower would fall and be hurt. Plaintiff also alleges in the first claim that DMC "ratified its deliberate behavior described herein which was intended to cause decedent's death by asking employs [*sic*] of DMC to sign affidavits containing false information concerning the facts and circumstances of decedent's death." It might be possible to read the first claim (and thus the ORICO claim) as alleging a deliberate intention to kill decedent, even without the additional allegations of the second claim, but for the positions that plaintiffs have taken in this litigation.

First, as noted, plaintiffs chose to incorporate the first claim by reference into the ORICO claim, but they chose not to incorporate by reference the second claim. In the trial court, plaintiffs described the "nature" of the first claim as one "alleging that DMC's negligence * * * caused the death of [decedent]." That is a characterization of the first claim to which plaintiffs have adhered expressly on appeal and review as well. They are bound by that characterization. *See McGanty v. Staudenraus*, 321 Or 532, 544 n 6, 901 P2d 841 (1995) (in a case involving the sufficiency of a complaint to plead certain theories, issues were decided on the basis of what the plaintiff's lawyer said could be proved, notwithstanding the broader wording of the complaint).

Second, plaintiffs' legal arguments concerning the relationship between ORS 656.018 and their ORICO claim do not rely on application of the deliberate-intention-to-injure exception of ORS 656.156(2). In response to defendants' assertion that their ORICO claim is barred, plaintiffs argued to the trial court that, because of "the unique remedial nature of ORICO," the workers' compensation statutes "should not bar a person from pursuing all available civil remedies under

ORICO." Plaintiffs also incorporated by reference their argu-
ments that application of ORS 656.156(2) to the facts of this
case would be unconstitutional. Significantly, plaintiffs did
*not* incorporate by reference the argument, made in connec-
tion with the second claim, that the allegations of the
amended complaint suffice to establish a deliberate intention
to injure or kill decedent. Likewise, on appeal and review,
plaintiffs' argument has been limited to the assertion that
ORS 656.018 does not apply to ORICO claims at all:

> "Plaintiffs' ORICO claim is separate from and com-
> pletely independent of Oregon's Workers' Compensation
> Act. ORICO's purpose, goals, and remedies, which address
> injury resulting from prohibited racketeering activity,
> make it an available remedy notwithstanding ORS
> 656.018."

To summarize, plaintiffs themselves characterize
the ORICO claim as one that does not seek to establish that
defendants specifically intended to injure or kill decedent.[13]
We analyze the applicability of the exclusivity provision in
the workers' compensation statutes accordingly.

As discussed above, ORS 656.018(2) explicitly pro-
vides that the remedies provided in the Workers' Compensa-
tion Act "are in lieu of any remedies [the injured worker]
might otherwise have for such injuries * * * against the
worker's employer under ORS 654.305 to 654.335 or other
laws, common law or statute." An employer that satisfies cer-
tain duties of the Workers' Compensation Act will be liable
for an employee's on-the-job injuries only to the extent that
that liability is provided for in the Act itself. The liability pro-
vided for in the Act is "exclusive and in place of all other lia-
bility." ORS 656.018(1)(a). *See also Nicholson,* 305 Or at 581
(so stating); *Fields,* 317 Or at 438-39 (same).

In the ORICO claim, plaintiffs allege that the events
that led to decedent's death occurred in the course and scope

---

[13] In connection with their assertion of entitlement to punitive damages, plain-
tiffs do allege (among other things) that defendants deliberately intended to injure
decedent. But that allegation is not made in connection with the *underlying*
ORICO claim. Plaintiffs are not offering to prove, in order to be entitled to recover
under ORICO *at all,* that defendants had that state of mind. Instead, plaintiffs are
asking that, if they can establish that state of mind, they be allowed to recover an
additional measure of damages not normally available on their underlying claim.

of decedent's employment. There is no allegation in the ORICO claim that places the events that gave rise to decedent's injuries outside the course and scope of decedent's employment. Similarly, there is no allegation in the ORICO claim that places Day's or DMC's actions outside their roles as decedent's employer.

Plaintiffs attempt to use ORICO as a back door through which to seek a remedy for a workplace injury that otherwise is barred by ORS 656.018(2). Plaintiffs allege safety violations that would give rise to a claim under ORS 654.305 to 654.335; but such a claim is barred expressly by ORS 656.018(2). Similarly, ORS 656.018(2) explicitly states that no "other laws * * * or statute[s]" provide a worker, who is injured in the course and scope of employment, with a remedy not provided in the Workers' Compensation Act. When a worker attempts to use ORICO to impose liability on the worker's employer for a workplace injury suffered by the worker, ORICO constitutes "other laws * * * or statute[s]." ORS 656.018 bars a worker's ORICO claim against the worker's employer when the injury to the worker that gave rise to the ORICO claim occurred in the course and scope of the worker's employment and is covered by the Workers' Compensation Act.

In their ORICO claim against defendants DMC and Day, plaintiffs allege that decedent was killed in the course and scope of his employment. Their claim, therefore, ·is barred by ORS 656.018.

The trial court did not err when it dismissed the ORICO claim. The Court of Appeals did not err when it affirmed that ruling.

## CONCLUSION

In summary, we hold:

(1) ORS 656.018 bars the personal representative's wrongful death claim, based on a theory of negligence, and that application of ORS 656.018 does not violate Article I, section 10, of the Oregon Constitution.

(2)   The personal representative alleges ultimate facts sufficient to meet the deliberate-intention-to-injure standard established in ORS 656.156(2).

(3)   ORS 656.018 bars plaintiffs' ORICO claim against decedent's employer for injuries that arose in the course and scope of decedent's employment.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

**DURHAM, J.,** concurring in part, dissenting in part.

I agree with the majority that the exclusivity provision of the Workers' Compensation Act, ORS 656.018, bars plaintiffs[1] first claim, which he argues is a "negligent" wrongful death claim, and that application of ORS 656.018 to that claim does not violate Article I, section 10, of the Oregon Constitution.[2] The trial court did not err in dismissing that claim. I also agree that, with respect to the second claim for "deliberate" wrongful death, plaintiff alleges ultimate facts that are sufficient to meet the deliberate-intention-to-injure standard set forth in ORS 656.156(2)[3] and that the trial court, therefore, erred in dismissing that claim. However, for the reasons that follow, I disagree with the majority's conclusion that ORS 656.018 bars plaintiffs' ORICO claim.

---

[1] In discussing the negligent wrongful death claim, I use the term "plaintiff" in the singular, as does the majority, 323 Or at 623 n 5, to refer to the personal representative of decedent's estate.

[2] Plaintiffs allege in the first claim that defendant DMC "deliberately" engaged in a number of acts that caused decedent's death. However, he argues, apparently for tactical reasons, that the first claim is a viable claim for *negligent* wrongful death. Plaintiff is bound by that characterization. Because plaintiff's characterization of the first claim is not consonant with the right of action described in ORS 656.156(2), ORS 656.018 bars that claim.

[3] ORS 656.156(2) provides:

"If injury or death results to a worker from the deliberate intention of the employer of the worker to produce such injury or death, the worker, the widow, widower, child or dependent of the worker may take under this chapter, and also have cause for action against the employer, as if such statutes had not been passed, for damages over the amount payable under those statutes."

Plaintiffs base the ORICO claim on allegations that defendants' repeated violations of Oregon's worker safety laws, ORS 654.305 to 654.335, and regulations promulgated pursuant to those statutes, resulted in decedent's death. I assume, without deciding, that ORS 656.018 and 656.156(2) apply to that claim. The majority concludes that plaintiffs do not allege deliberate intent to injure in connection with the ORICO claim and, as a result, ORS 656.018 bars that action. The majority is incorrect.

The ORICO claim incorporates the following factual allegations:

"7.

"The work in which the decedent was employed at the time of his death involved an extreme risk of death and danger to employees. The Tower is 603 feet tall. It presents life threatening conditions of fall hazard.

"* * * * *

"10.

"Defendant DMC was aware of said falls, of decedent's previous injury, and that decedent fell because he was not supplied with required fall protection equipment. Defendant DMC *deliberately* took no steps to prevent decedent from falling again.

"* * * * *

"12.

"Decedent was nervous and apprehensive about climbing. He requested that he not climb anymore. Defendant DMC refused this request and ordered decedent to climb or leave his employment.

"* * * * *

"16.

"Prior to decedent's death, DMC *deliberately* did not instruct decedent and other workers to use required safety equipment or to follow safe work practices and OR-OSHA's fall protection regulations. Decedent and other workers

were allowed and encouraged by Defendant DMC to 'free climb' the Tower which they often did.

"17.

"Defendant DMC *deliberately* allowed and encouraged decedent and other workers not to use required ladder devices, not to always 'tie off' as required, and not to use other required fall protection equipment and safe procedures. Defendant DMC *deliberately* did not supply nor require necessary fall protection equipment.

"18.

"Defendant DMC *deliberately* allowed and encouraged decedent and other workers to not wear required hard hats.

"19.

"Defendant DMC *deliberately* refused and failed to develop a system or plan to ensure the safety of its workers at the Tower.

"20.

"Defendant DMC *deliberately* failed to provide adequate supervision to ensure that DMC workers on the Tower, including decedent, followed safe work practices and fall protection regulations.

"21.

"As a result of Defendant DMC's *deliberate conduct* as alleged above, workers on the Tower, including decedent, were not adequately protected from fall:

"(a)  When they were allowed to free climb the Tower.

"(b)  When they were not supplied and therefore did not use approved devices compatible with the Tower ladder safety cable.

"(c)  When they stepped off the ladder to their work position at the Tower cable tray area.

"(d)  When they were allowed to rappel down the Tower center tube.

"(e)   When they were connected to the Tower ladder safety cable by a four-foot lanyard, against the manufacturer's specifications and ANSI A14.3.

"(f)   When they used fall-protection equipment against manufacturer's instructions, including using positioning belts for fall-arrest protection, connecting both snap locks of pole straps into the hip ring, using pole straps as lanyards, and wrapping pole straps lanyards around sharp objects.

"* * * * *

"26.

"Defendant DMC has *ratified its deliberate behavior* described herein *which was intended to cause decedent's death* by asking employs [*sic*] of DMC to sign affidavits containing false information concerning the facts and circumstances of decedent's death." (Emphasis added.)

ORCP 12 provides:

"A.   Liberal Construction. All pleadings shall be liberally construed with a view of substantial justice between the parties.

"B.   Disregard of Error or Defect Not Affecting Substantial Right. The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party."

This court is obliged to review the allegations quoted above, and all inferences that they create, in the light most favorable to the nonmoving party. *Stringer v. Car Data Systems, Inc.*, 314 Or 576, 584, 841 P2d 1183 (1992).

Viewed in that light, the ORICO claim is susceptible of a reasonable interpretation that satisfies the deliberate-intention-to-injure standard in ORS 656.156(2). The complaint alleges facts showing the risk of death and danger that decedent faced in working on the tower and describes a long list of deliberate actions and failures to act by defendant DMC that caused decedent's death. Significantly, paragraph 26, last quoted above, refers to defendant DMC's deliberate behavior that caused the death and states that such behavior "was intended to cause decedent's death."

ORS 656.156(2) removes the bar to liability in ORS 656.018 if the worker is injured or killed due to the "deliberate intention of the employer * * * to produce such injury or death." This court's cases require a pleading, under ORS 656.156(2), to allege an employer's specific intent to injure the worker, in contrast to a state of mind characterized by recklessness or simple negligence. *See Jenkins v. Carman Mfg. Co.*, 79 Or 448, 453-54, 115 P 703 (1916) ("there must be a specific intent, and not merely carelessness or negligence, however gross"); *Heikkila v. Ewen Transfer Co.*, 135 Or 631, 634, 297 P 373 (1931) ("the employer must have determined to injure an employee").

Plaintiffs' ORICO claim does not allege that defendant DMC acted negligently or recklessly. Instead, it alleges that defendant DMC's deliberate behavior "was intended to cause decedent's death." In contrast to plaintiff's argument about the first claim, the ORICO claim does not state that defendant DMC's behavior "negligently" caused decedent's death.

In their ORICO claim, plaintiffs incorporate by reference the facts alleged in their claim for negligent wrongful death. Those allegations describe a pattern of deliberate conduct that plaintiffs expressly allege "was intended to cause decedent's death." The fact that plaintiff characterizes the first claim as based on a theory of negligence has no bearing on the question whether those factual allegations, when incorporated into the ORICO claim, are sufficient to satisfy the deliberate-intention-to-injure standard of ORS 656.156(2).

In concluding that ORS 656.018 does not bar plaintiff's second claim, the majority relies on plaintiff's allegations that "serious injury to or death of a worker was *certain to occur*, that DMC failed to take requisite safety precautions or buy requisite safety equipment, and that DMC instructed decedent to climb the tower while *knowing* that a worker who climbed the tower *would* fall and be hurt." 323 Or at 633 (emphasis supplied by the majority). What the majority fails to mention is that *plaintiffs also incorporate each of those same allegations into their ORICO claim.*

The majority rests its conclusion that ORS 656.018 bars plaintiffs' ORICO claim on the following reasoning:

"[I]n the ORICO claim, plaintiffs do not cite ORS 656.156(2) and do not allege that '[t]he injury to and death of decedent resulted from the deliberate intention of Defendant DMC to produce such injury and death' or that decedent, had he lived, would have had cause for action against DMC for its wrongful acts." 323 Or at 634-35.

The majority does not explain why plaintiffs' failure to include a citation to ORS 656.156(2) in connection with their ORICO claim precludes plaintiffs from obtaining the benefit of that statute. The absence of a citation to ORS 656.156(2) is of no moment in determining whether plaintiffs have alleged sufficient facts in their ORICO claim to remove the bar of ORS 656.018.

Finally, the majority ignores paragraph 96 of the complaint, which is part of the ORICO claim, which alleges that defendants

"willfully ignored the public policy in favor of worker safety laws [see ORS chapter 654], knowingly violated [their] duty to provide a safe work environment [see ORS 654.101 and 654.305] without regard to the cost of safety measures, wantonly failed to comply with state safety standards [see ORS 654.022, 654.310, and OAR 437-3-040(1)], and *deliberately intended to cause worker injury and death.* Such wrongful acts are reprehensible and are of the type from which the community deserves protection; accordingly, punitive damages should be assessed against Defendants DMC and Day in the amount of $20,000,000.00." (Emphasis added.)

The majority explains its unwillingness to give effect to the allegations in that paragraph as follows:

"Plaintiffs are not offering to prove, in order to be entitled to recover under ORICO *at all*, that defendants had that state of mind [*i.e.,* a deliberate intention to injure]. Instead, plaintiffs are asking that, if they can establish that state of mind, they be allowed to recover an additional measure of damages not normally available on their underlying claim." 323 Or at 636 n 13 (emphasis supplied by the majority).

The majority may or may not be correct that plaintiffs incorporated an allegation that defendants "deliberately intended to cause worker injury and death" as part of their ORICO claim for the sole purpose of supporting a claim for punitive damages. However, even assuming that the majority's speculation is correct, we may not overlook that allegation in assessing the sufficiency of the complaint. The majority cites to no legal authority in support of its decision to do so. The majority's unwillingness to give effect to that allegation is a misapplication of this court's standard of review and a departure from settled legal principles.

In sum, the majority's conclusion that plaintiffs do not allege a deliberate injury in their ORICO claim is incorrect. The ORICO claim alleges facts that describe a deliberate injury, not the result of mere negligence. Plaintiffs incorporate into the ORICO claim the very same allegations upon which the majority relies in concluding that plaintiff's second claim does allege a deliberate intention to injure and is not barred by ORS 656.018. Moreover, plaintiffs allege, in paragraph 96 of the complaint, which is part of the ORICO claim, that defendants "deliberately intended to cause worker injury and death." Those allegations plainly are sufficient to remove the bar of ORS 656.018. Accordingly, the ORICO claim is not subject to dismissal for the reason expressed by the majority.

For the foregoing reasons, I dissent from the majority's analysis and conclusion regarding the sufficiency of the ORICO claim.