Argued and submitted October 6, 1999, reversed and remanded with instructions May 31, 2000

CITY OF SALEM,
an Oregon municipal corporation,
*Respondent,*

*v.*

Steven P. SALISBURY,
George R. Finch, and Theodore J. Kistner,
*Appellants,*
*and*

SALEM POLICE EMPLOYEES' UNION,
by and through Terry Locke,
*Intervenor-Appellant.*

(96C12377; CA A103039)

5 P3d 1131

J. Michael Alexander argued the cause and filed the briefs for appellants Steven P. Salisbury and Theodore J. Kistner. With him on the briefs was Burt, Swanson, Lathen, Alexander & McCann, P. C.

Aaron E. Clingerman argued the cause and filed the briefs for appellant George R. Finch. With him on the briefs was Law Offices of Michael B. Dye.

Daryl S. Garrettson argued the cause and filed the briefs for intervenor-appellant Salem Police Employees' Union. With him on the briefs was Hoag, Garrettson, Goldberg, Fenrich & Makler.

Joseph D. Robertson argued the cause for respondent City of Salem. With him on the brief were Kim E. Hoyt, and Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P. C.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

This case involves a declaratory judgment proceeding under ORS chapter 28 brought by the City of Salem (city) seeking a determination of its statutory and contractual obligation to supply uninsured motorists benefits to its police officers. Defendants and intervenor, Salem Police Employees' Union (union), appeal from the trial court's grant of the city's motion for summary judgment. ORCP 47. Defendants include Officers Steven Salisbury and Theodore Kistner, members of the union, and Officer George Finch, who is not a union member. We reverse.

The underlying facts are not disputed. Defendants, acting as police officers, were injured in traffic accidents involving drivers operating uninsured vehicles. Defendants filed workers' compensation claims for their injuries, and those claims have been closed. In addition, defendants filed claims, as insureds, with the city, which is self-insured, asserting that the city was required to furnish them with uninsured motorist coverage.

In its second amended complaint, the city seeks declarations (1) that defendants' claims against it are barred by ORS 656.018 (the exclusive remedy provision of the workers' compensation law);[1] (2) that, in the event the claims are not barred by that statute, the city can elect the coverage limit set forth in ORS 806.070 and offset from the amounts payable under that statute the amounts paid to defendants under their workers' compensation claims; and, (3) that if the court finds that the city is obligated under the collective bargaining agreement with the union to provide coverage, that the city can offset those amounts by the amounts paid on the workers' compensation claims.

---

[1] ORS 656.018(1)(a) provides:

"The liability of every employer who satisfies the duty required by ORS 656.017 (1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such conditions, except as specifically provided otherwise in this chapter."

After the city filed its complaint, but before the trial court ruled on the city's motion for summary judgment, the union filed a grievance under the collective bargaining agreement. In response to the grievance, an arbitrator ruled that the city was required to furnish benefits to injured union members. In addition, the city and the union stipulated that the arbitrator would retain jurisdiction over any dispute about amounts to be paid to the injured officers. In the circuit court proceeding, the city moved for summary judgment. In contravention to the summary judgment motion, all defendants argued that ORS 278.215 requires the city to provide them uninsured motorist benefits to whatever extent their damages are not compensated by workers' compensation benefits. The union and defendants Salisbury and Kistner also asserted that the circuit court did not have jurisdiction to decide the issue of what was required under the collective bargaining agreement and the city's complaint should be dismissed. In addition, they argued that, under the collective bargaining agreement with the city, the city is required to provide uninsured motorist coverage for union members.

The trial court rejected defendants' arguments and entered summary judgment for the city on its first claim, declaring that

"any and all claims, other than claims under ORS Chapter 656, that the defendants and other members of the intervenor would otherwise have against the City arising out of injuries allegedly sustained by defendants in uninsured or underinsured motor vehicle accidents are barred by ORS 656.018."

Also, the trial court dismissed as moot the city's second and third claims for relief.

■■ Initially, we discuss the claims for declaratory judgment as they pertain to defendants Salisbury and Kistner. As they did below, those defendants assert that the Employment Relations Board (ERB) has exclusive jurisdiction over the issue of whether the city is obligated under the collective bargaining agreement to provide uninsured motorist coverage. ERB has the duty of hearing and deciding all unfair labor practice complaints concerning public employers. *Trout v. Umatilla Co. School Dist.*, 77 Or App 95, 98, 712 P2d 814

(1985), *rev den* 300 Or 704 (1986). ORS 243.672 provides, in relevant part:

> "(1)   It is an unfair labor practice for a public employer or its designated representative to do any of the following:
>
> "\* \* \* \* \*
>
> "(g)   Violate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them."

The collective bargaining agreement between the union and the city provides that unresolved grievances are subject to arbitration and that "[t]he decision(s) of the arbitrator shall be binding on both parties to this contract." As defined in the agreement, a grievance is "a dispute regarding the meaning or interpretation of a particular clause of this contract or regarding an alleged violation of this contract." The agreement also provides that "changes in existing conditions of employment relating to wages, hours, and working conditions shall be subject to mutual agreement before becoming effective."

The arbitrator found that "[p]rior to 1992, the City maintained a UM [uninsured motorist] policy covering unit employees to a maximum combined limit of $50,000." She concluded, "[t]he former uninsured motorist insurance policy of $50,000 was a benefit covered by the Existing Conditions Article of the Contract." Also, we are mindful of the fact that ERB has exclusive jurisdiction over the interpretation of the parties' contract and the issues involving arbitration under the contract. *Reinwald v. Dept. of Employment,* 148 Or App 75, 80, 939 P2d 86 (1997). In addition, ERB also has exclusive jurisdiction over any unfair labor practice, although the circuit court may have jurisdiction to enforce remedies "beyond those that ERB can order." *Id.*

Here, the city proceeded to circuit court for declaratory relief without engaging in the procedures established by the collective bargaining agreement. Because ERB has exclusive jurisdiction over the issue regarding the meaning of the

collective bargaining agreement, the city could not circumvent the exercise of that jurisdiction by obtaining a judgment in circuit court for declaratory relief. Therefore, the trial court should have dismissed the city's claim for a declaration regarding defendants Salisbury's and Kistner's ability to recover uninsured motorist benefits under the collective bargaining agreement.

■      The remainder of our opinion focuses on the issues presented on appeal as they relate to the ability of defendants to make claims for uninsured motorist coverage under ORS 278.215, apart from any rights under the collective bargaining agreement. On review of a summary judgment, we determine whether there exists any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. ORCP 47 C (1997).[2] We review the record in the light most favorable to defendants, the nonmoving parties. *Id.* Whether summary judgment is permissible in this case involves the interpretation of several statutes. The first level of statutory analysis requires us to examine the text and context of the statutes for evidence of the legislature's intent.

We begin with ORS 278.215, which provides:

"(1)   Any insurance or self-insurance provided by moneys from the Insurance Fund for or on account of the operation of motor vehicles within the state's or public body's control, shall provide the uninsured motorist coverage required under ORS 742.500 to 742.504 and, except as specified in ORS 278.205, may provide the personal injury protection benefits required under ORS 742.520 to 742.542.

"(2)   Any local public body, as defined in ORS 30.260, which establishes a self-insurance fund under ORS 30.282 for or on account of the operation of motor vehicles within the local public body's control, shall provide the uninsured motorist coverage required under ORS 742.500 to 742.504

---

[2] This case was pending before us when Oregon Laws 1999, chapter 815 (amending ORCP 47 C), went into effect. The parties do not argue that any changes effected by the amended version of ORCP 47 C should be applied in this case in the first instance on appeal, and we decline to apply those amendments on our own motion. *See Graham v. State of Oregon,* 164 Or App 747, 757 n 5, 995 P2d 1167 (2000).

and may provide the personal injury protection benefits required under ORS 742.520 to 742.542.

"(3)   The uninsured motorist coverage provided under this section shall be excess over any other collateral benefits to which an injured person is entitled, including, but not limited to, other uninsured motorist coverage, insurance benefits, governmental benefits or gratuitous benefits."

The city does not dispute that it is required to provide uninsured motorist coverage under ORS 278.215. Instead, it argues that the coverage required by the statute is applicable only to "non-employees injured in an uninsured motorist accident" and that the workers' compensation law provides the exclusive remedy to city employees injured under the same circumstances.

ORS 278.215 requires that a public body "shall provide the uninsured motorist coverage required under ORS 742.500 to 742.504." ORS 742.504 provides, in relevant part:

"Every policy * * * shall provide uninsured motorist coverage which in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy. However, nothing contained in this section shall require the insurer to reproduce in such policy the particular language of any of the following provisions:

"(1)(a)   The insurer will pay all sums which the insured * * * shall be legally entitled to recover as general and special damages from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of such uninsured vehicle. Determination as to whether the insured * * * is legally entitled to recover such damages, and if so, the amount thereof, shall be made by agreement between the insured and the insurer, or, in the event of disagreement, may be determined by arbitration as provided in subsection (10) of this section.

"* * * * *

"(2)   As used in this policy:

"(a)   'Insured,' when unqualified, means when applied to uninsured motorist coverage:

"* * * * *

"(C) Any other person while occupying an insured vehicle provided the actual use thereof is with the permission of the named insured.

"(b) 'Insured vehicle,' except as provided in paragraph (c) of this provision, means:

"(A) The vehicle described in the policy or a newly acquired or substitute vehicle, as each of those terms is defined in the public liability coverage of the policy, insured under the public liability provisions of the policy; or

"(B) A nonowned vehicle operated by the named insured or spouse if a resident of the same household; provided the actual use thereof is with the permission of the owner of such vehicle and such vehicle is not owned by nor furnished for the regular or frequent use of the insured or any member of the same household.

"(c) 'Insured vehicle' does not include a trailer of any type unless such trailer is a described vehicle in the policy.

"* * * * *

"(i) 'Occupying' means in or upon or entering into or alighting from.

"* * * * *

"(k) 'Vehicle' means every device in, upon or by which any person or property is or may be transported or drawn upon a public highway, but does not include devices moved by human power or used exclusively upon stationary rails or tracks.

"* * * * *

"(4)(a) * * *

"* * * * *

"(c) This coverage does not apply so as to inure directly or indirectly to the benefit of any workers' compensation carrier, any person or organization qualifying as a self-insurer under any workers' compensation or disability benefits law or any similar law or the State Accident Insurance Fund Corporation.

"* * * * *

"(7)(a)   The limit of liability stated in the declarations as applicable to 'each person' is the limit of the insurer's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

"(b)   Any payment made under this coverage to or for an insured shall be applied in reduction of any amount which the insured may be entitled to recover from any person who is an insured under the bodily injury liability coverage of this policy.

"(c)   *Any amount payable under the terms of this coverage* because of bodily injury sustained in an accident by a person who is an insured under this coverage *shall be reduced by*:

"(A)   All sums paid on account of such bodily injury by or on behalf of the owner or operator of the uninsured vehicle and by or on behalf of any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the bodily injury liability coverage of the policy; and

"(B)   *The amount paid* and the present value of all amounts payable on account of such bodily injury *under any workers' compensation law, disability benefits law or any similar law*.

"* * * * *

"(9)(a)   Except as provided in paragraph (c) of this subsection, with respect to bodily injury to an insured while occupying a vehicle not owned by a named insured under this coverage, the insurance under this coverage shall apply only as excess insurance over any other insurance available to such occupant which is similar to this coverage, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance.

"(b)   With respect to bodily injury to an insured while occupying or through being struck by an uninsured vehicle,

if such insured is an insured under other insurance available to the insured which is similar to this coverage, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance or such other insurance, and the insurer shall not be liable under this coverage for a greater proportion of the damages than the applicable limit of liability of this coverage bears to the sum of the applicable limits of liability of this insurance and such other insurance.

"(c)   With respect to bodily injury to an insured while occupying any motor vehicle used as a public or livery conveyance, the insurance under this coverage shall apply only as excess insurance over any other insurance available to the insured which is similar to this coverage, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance." (Emphasis added.)

ORS 656.018 provides, in relevant part:

"(1)(a)   *The liability of every employer who satisfies the duty required by ORS 656.017 (1) is exclusive and in place of all other liability* arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such conditions, except as specifically provided otherwise in this chapter.

"* * * * *

"(c)   Except as provided in paragraph (b) of this subsection, all agreements or warranties contrary to the provisions of paragraph (a) of this subsection entered into after July 19, 1977, are void.

"(2)   *The rights given to a subject worker* and the beneficiaries of the subject worker under this chapter for injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment *are in lieu of any remedies they might otherwise have* for such injuries, diseases, symptom complexes or similar conditions against

the worker's employer *under* ORS 654.305 to 654.335 or *other laws, common law or statute*, except to the extent the worker is expressly given the right under this chapter to bring suit against the employer of the worker for an injury, disease, symptom complex or similar condition.

"* * * * *

"(6) *Nothing in this chapter shall prohibit payment, voluntarily or otherwise, to injured workers or their beneficiaries in excess of the compensation required to be paid under this chapter.*

"(7)  The exclusive remedy provisions and limitation on liability provisions of this chapter apply to all injuries and to diseases, symptom complexes or similar conditions of subject workers arising out of and in the course of employment whether or not they are determined to be compensable under this chapter." (Emphasis added.)

■ Also, we consider in the first level of analysis the prior enacted versions of the operative statutes as context for the existing statutes as well as the preexisting common-law and statutory frameworks within which the laws were enacted in our effort to discern the legislature's intent. *State v. Webb*, 324 Or 380, 390, 927 P2d 79 (1996); *Goodyear Tire & Rubber Co. v. Tualatin Tire and Auto*, 322 Or 406, 416-17, 908 P2d 300 (1995), *on recons* 325 Or 46, 932 P2d 1141 (1997). The statutory predecessors of ORS 742.500 through ORS 724.504 were initially enacted in 1959 as *former* ORS 736.317 and were replaced by ORS 743.786 through ORS 743.792 (1967). Or Laws 1959, ch 413; Or Laws 1967, ch 482. In 1959, ORS 736.317 required insurance policies to provide uninsured motorist coverage on vehicles, with the exception of motor trucks "where the insured has employes who operate the motor trucks *and such employes are covered by workmen's compensation.*" ORS 736.317(3) (emphasis added).

In 1965, the legislature made workers' compensation insurance coverage compulsory, whereas previously it had been voluntary. As part of the statutory scheme, the legislature enacted an exclusive remedy provision and the existing language found in ORS 656.018(2) that "[t]he rights given to a subject worker * * * are in lieu of any remedies * * *

against the workman's employer under * * * other laws, common law or statute * * *." Or Laws 1965, ch 285, § 6. When the legislature repealed ORS 736.317 in 1967 and replaced it with ORS 743.786 through ORS 743.792, it retained the exception for motor trucks and added busses and taxicabs to the exception. Or Laws 1967, ch 482; ORS 743.786(2)(b) (1967). In other words, the legislature continued to permit employers to exclude certain vehicles from uninsured motorist coverage at that time, *if* workers' compensation coverage was provided to their employees.[3] When the legislature enacted ORS 278.215, requiring public bodies to provide uninsured motorist coverage in 1979, it also amended ORS 743.786(2)(b) (1977) so that the exclusion from uninsured motorist coverage applied only to trucks. Or Laws 1979, ch 842, §§ 5, 7; ORS 278.200. In 1989, ORS 743.786(2)(b) (1987) was renumbered as ORS 742.500(2)(b).[4]

There is no express language in the text of ORS 278.215 or ORS 742.500 through ORS 742.504 that convinces us that the legislature meant to require a public body to provide uninsured motorist benefits only to nonemployees. The statutes make no express distinction between employees and nonemployees, and ORS 742.504(4)(c), (7)(c)(B), and (9) expressly contemplate that, in some circumstances, the injured person may recover from multiple sources. If anything, the statutory predecessors to ORS 742.500 through ORS 742.504 demonstrate that the legislature knew how to

---

[3] In *Safeco Insurance Co. v. Christensen*, 248 Or 550, 436 P2d 270 (1968), the court considered the exclusion for trucks in ORS 736.317. The court explained that "[t]he purpose of the subsection was to relieve truckers of the cost of providing uninsured motorist protection for their employees if the employees were given equivalent protection through 'workmen's compensation.'" *Christensen*, 248 Or at 553.

[4] ORS 742.500(2) provides:

"'*Motor vehicle*' means every self-propelled device in, upon or by which any person or property is or may be transported or drawn upon a public highway, but *does not include*:

"(a) Devices used exclusively upon stationary rails or tracks;

"(b) Motor trucks as defined in ORS 801.355 that have a registration weight, as defined by ORS 803.430 of more than 8,000 pounds, *when the insured has employees who operate such trucks and such employees are covered by any workers' compensation law, disability benefits law or any similar law*; or

"(c) Farm-type tractors or self-propelled equipment designed for use principally off public highways." (Emphasis added.)

eliminate the requirement for uninsured motorist coverage for those who were covered by workers' compensation. The present statute does not contain such an exception except for certain trucks and other exceptions to the definition of "motor vehicle." ORS 742.500(2). Likewise, ORS 278.215(3) provides that the uninsured motorist coverage *"shall be excess over* any other collateral benefits to which an injured person is entitled, including, but not limited to, *other uninsured motorist coverage, insurance benefits, government benefits or gratuitous benefits*." (Emphasis added.) Also, ORS 742.504(7)(c) provides that any amounts payable under the statute for bodily injury "shall be reduced" by workers' compensation benefits. In summary, the text and context of the above statutes suggest that before 1979 employees of private sector employers could collect uninsured motorist benefits subject to reduction because of duplicative workers' compensation benefits and that ORS 278.215 was enacted to place employees of public bodies in a similar posture.

Nonetheless, the language in ORS 656.018 could be understood to controvert that understanding. ORS 656.018 was already in place when ORS 278.215 was enacted in 1979. If ORS 278.215 is intended as one of the "laws" or "statute[s]" to which ORS 656.018 refers as being subject to its exclusivity provision, then the trial court did not err. As the court emphasized in *Kilminster v. Day Management Corp.*, 323 Or 618, 637, 919 P2d 474 (1996), "ORS 656.018(2) explicitly states that no 'other laws * * * or statute[s]' provide a worker, who is injured in the course and scope of employment, with a remedy not provided in the Workers' Compensation Act."

Defendants argue that ORS 656.018 is not implicated because they do not seek a tort-like remedy against the city. Rather, their claims are based on their relationship with the city as insureds. According to them, relationships between insureds and insurer are viewed in contractual terms, and the uninsured motorist statutes operate to create obligations whether or not the coverage appears in an agreed-upon policy. *Fox v. Country Mutual Ins. Co.*, 327 Or 500, 503-06, 964 P2d 997 (1998). They explain:

"The recognized purpose of the exclusive remedy provision is to supplant the *common law* method of recovery.

ORS 656.012(1)(b). The entire worker's compensation system has traditionally been a substitute for *tort* claims by an employee against an employer. *Hale v. Port of Portland*, 308 Or 508, 521, 783 P2d 506 (1990), citing *Evanhoff v. State Industrial Acc. Com.*, 78 Or 503, 154 P 106 (1915). The 1995 revisions of the statute were in response to the case of *Errand v. Cascade Steel Rolling Mills[, Inc.]*, 320 Or 509, 888 P2d 544 (1995), which allowed a tort claim against an employer arising from an injury which arose on the job, but was not compensable because of insufficient causation. Such legislation made it clear that even employees who suffered non-compensable injuries in the course of their employment would have no tort remedies against their employer. Again, the pertinent issue was a potential tort claim." (Footnote omitted.)

Defendants' argument finds some support in Supreme Court interpretations of ORS 656.018, which we consider in the first level of statutory analysis. *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995). In *Hale*, the court explained:

"[T]he Oregon Legislature * * * eliminated the haphazard system of liability of employers to some employees for some injuries occurring under a limited number of circumstances, and replaced it with a system that made employers liable for the medical expenses of their injured workers without regard to fault. The scheme penalized some members of both camps—those plaintiffs who could prove actionable negligence of their employers, and so obtain damages beyond their medical expenses, and those employers who could defeat liability either because they had not been negligent or because they could show the worker was guilty of contributory negligence or assumption of the risk." 308 Or at 521-22.[5]

Also in *McGarrah v. SAIF*, 296 Or 145, 160-61, 675 P2d 159 (1983), the court described the workers' compensation system as where "[i]n exchange for * * * relief under this no-fault recovery system, employes are limited to a fixed schedule of recovery and must abandon any common law right of action against their employers." In *Hale* and *McGarrah*, the court's

---

[5] Although in *Hale* the court was not interpreting the exclusive remedy provision, the court has quoted this language when interpreting ORS 656.018. *Errand*, 320 Or at 524.

references to "fault" and "no-fault recovery" support defendants' interpretation of ORS 656.018 as applying to liability arising from traditional common-law tort actions involving negligence. Nonetheless, the court held in *Kilminster* that a non-negligence based claim under the Oregon Racketeer Influenced and Corrupt Organization Act statute was governed by ORS 656.018. 323 Or at 637.

In light of the arguable conflict between the exclusive remedy provision of ORS 656.018 and the language in ORS 278.215 and ORS 742.504 providing expressly for a reduction from uninsured motorist benefits because of workers' compensation benefits, we conclude that an ambiguity arises in ORS 278.215 regarding the legislature's intent. The legislature could have said, as it did in *former* ORS 736.317(3), that there was no uninsured motorist coverage for employees covered by workers' compensation. However, it did not. On the other hand, it could have amended ORS 656.018 in 1979 to except uninsured motorist coverage from the statute's exclusivity language, and it did not do that either. Therefore, we turn to the legislative history under ORS 278.215 to seek further guidance.

ORS 278.215 was introduced in the Senate as Senate Bill 245 at the request of the Department of General Services to ensure that state-owned motor vehicles had adequate and complete coverage. Testimony, Senate Judiciary Committee, SB 245, January 26, 1979, Ex D (statement of Bob Elgin, General Services). Initially, the legislative history underlying the statute indicates that its focus was to "allow the State to include medical and uninsured motorist coverage as a part of its self-insurance tort liability" because "[t]he present tort liability act [did] not provide any medical insurance and uninsured motorist coverage for passengers or drivers of vehicles who are not employees of the State or local public agencies." *Id.* At a Senate Judiciary Committee hearing early in the legislative session, there were questions raised about the language of the proposed bill. Senate Judiciary Committee, SB 245, March 5, 1979, Ex G (letter from the Department of General Services to Diana Godwin, Counsel for the Senate Judiciary Committee). An ad hoc committee reviewed the bill and prepared amendments that included the language that became the basis for section 2 of

the bill. *Id.* Section 2, which would be modified and would become ORS 278.205[6] provided:

> "The Department of General Services may issue a certificate of motor vehicle liability insurance and make assessments therefor which insurance shall be in an amount not greater than the amounts provided in ORS 30.270. Such insurance may also include 'uninsured motorist' and 'personal injury protection' in at least the minimum coverages and amounts set forth in ORS 743.786 to 743.835 as to the following motor vehicles:
>
> "(1) State owned vehicles furnished for public use pursuant to state law, other than to another governmental agency.
>
> "(2) Motor vehicles owned by local public bodies insured under the liability fund pursuant to ORS 30.282."
>
> Senate Judiciary Committee, SB 245, March 5, 1979, Ex G (letter from the Department of General Services to Diana Godwin, Counsel for the Senate Judiciary Committee).

Also, in the committee process, Senator Vern Cook amended the bill to include other amendments to ORS 742.500 ORS ORS through 742.542. Tape recording, Senate Judiciary Committee, SB 245, April 30, 1979, Tape 37, Side 1. In addition, legislative counsel proposed amendments to include a section 4 that would require all self-insured public bodies to provide the same coverage as section 2. Senate Judiciary

---

[6] ORS 278.205 presently provides:

"(1) The Oregon Department of Administrative Services may issue a certificate of motor vehicle liability insurance and make assessments therefor.

"(2) When issued on vehicles owned by local public bodies, such insurance shall also include uninsured motorist coverage and may include personal injury protection benefits and shall provide at least the minimum coverages and amounts set forth in ORS 742.500 to 742.542. However, at the request of a local public body, the department may provide uninsured motorist coverage or personal injury protection benefits for the motor vehicles owned by the local public body in amounts greater than those required under ORS 742.500 to 742.542.

"(3) When issued on state-owned vehicles furnished for public use including, but not limited to, use authorized under ORS 276.598, such insurance shall include uninsured motorist coverage and personal injury protection benefits and shall provide at least the minimum coverages and amounts set forth in ORS 742.500 to 742.542.

"(4) The department by rule may provide personal injury protection benefits in excess of those specified in this section."

Committee, SB 245, April 30, 1979, Ex Q (proposed amendments to A-Engrossed Senate Bill 245 by Legislative Counsel). Section 4 as approved by the committee provided:

"(1)   Any self-insurance provided by moneys from the Liability Fund against liability of the State of Oregon and its officers, agents or employes, or against the liability of a participating local public body and its officers, agents or employes, for or on account of the operation of motor vehicles within the state's or public body's control, shall provide the uninsured motorist coverage required under ORS 743.789 and 743.792 and the personal injury protection benefits required under ORS 743.800 and 743.805.

"(2)   Any local public body, as defined in ORS 30.260, which establishes a self-insurance fund under ORS 30.282 against liability of the local public body and its officers, agents or employes, for or on account of the operation of motor vehicles within the local public body's control, shall provide the uninsured motorist coverage required under ORS 743.789 and 743.792 and the personal injury protection benefits required under ORS 743.800 and 743.805.

"(3)   The uninsured motorist coverage and personal injury protection benefits provided under this section shall be excess over any other collateral benefits to which an injured person is entitled, including, but not limited to, other uninsured motorist coverage or personal injury protection benefits, insurance benefits, governmental benefits or gratuitous benefits." B-Engrossed SB 245, 1979 Legislative Assembly.

Section 4 eventually became ORS 278.215.

At a Senate Judiciary Committee work session on Senate Bill 245, the committee discussed the precise issue raised by this case. Tape recording, Senate Judiciary Committee, SB 245, April 30, 1979, Tape 37, Side 1. Senator James Gardner inquired about the references to workers' compensation in the bill,[7] and, in response, Senator Cook explained that those provisions were intended to prevent duplicate recovery for the same injuries. Legislative Counsel

---

[7] So far as we can ascertain, the inquiry regarded the language presently in ORS 742.504(7)(c)(B).

Diana Godwin confirmed that the provisions dealt with collateral sources of recovery. After considerable discussion about whether any excess over workers' compensation benefits could be collected by an injured person, Senator Gardner asked specifically whether a bus driver could recover from the uninsured motorist policy of the bus company. Godwin replied that if the legislature required a bus company to carry uninsured motorist coverage, "we're going to allow the driver not only to collect workers' compensation but to collect on the UM policy of the bus company." *Id*. Senators Brown and Cook agreed, explaining that it would put the bus driver in the same position as an operator of privately owned vehicles.

Not entirely persuaded, Senator Gardner asked to hear from the Tri-Met representative. Tri-Met's attorney, Bill Hallmark, related the history underlying the existing uninsured motorist statute, including the former exception for busses, taxis and trucks and that those exceptions were based on the definition of "motor vehicle." Senator Gardner asked again whether, under the proposed bill's amendments to ORS 742.500 through ORS 742.504, bus drivers could get a duplicate recovery. Hallmark responded negatively and explained that the provisions of the existing law allowed for a reduction of uninsured motorist benefits for workers' compensation benefits received in the event of a double recovery problem. Godwin restated Senator Gardner's question:

> "If I am working for a private employer and he has private vehicles with private insurance, UM and PIP [personal injury protection] is automatically covered. If an employee is injured while driving one of those company cars on company time and I am injured by an uninsured motorist, I am covered by workers' compensation because I am an employee. Also, the car had UM and PIP coverage. Am I allowed to go against my employer's UM and PIP coverage in excess above my workers' compensation limit?" Tape recording, Senate Judiciary Committee, SB 245, April 30, 1979, Tape 37, Side 1.

Hallmark replied: "It's really not an excess situation. You're allowed to, within the limits of the UM and PIP coverage, if the workers' compensation doesn't satisfy those limits, you can get the difference, but you wouldn't stack one on top of the other." *Id*.

When the bill went to the House Judiciary Subcommittee, the Department of General Service's representative, Kenneth Dory, explained about the department's original purpose in introducing the bill and pointed out:

> "Senator Cook's amendments include UM and PIP by private insurers for any coverage they write for buses, taxi cabs and any privately owned vehicles which are used as a public livery conveyance. The original bill was aimed at public agencies who are self-insured by adding UM and PIP to state-owned vehicles and other public vehicles used by public agencies. The senate amendments made the bill cover Tri-Met and other types of busses like Greyhound and taxi cabs." Tape recording, House Judiciary Subcommittee 3, SB 245, June 14, 1979, Tape 88, Side 1.

Representative Mason asked if, "by definition, the *uninsured motorist* will always be the non-government driver." *Id.* (emphasis added). Dory, perhaps misunderstanding the question to be about the *recipient* of the uninsured motorist coverage, replied: "Yes, it would be the passenger." Mason questioned, "of the government vehicle?" and Dory responded, "yes, of the government vehicle * * * the driver could be if he were a volunteer and not have insurance and driving a government vehicle." *Id.* Representative Lombard stated "that was going to be my question. What was the need for UM and PIP coverage when it would seem in the first place that in most instances, state employees driving state vehicles are going to be covered for the type of things * * * under the state medical plan?" *Id.* Elgin explained that the state found itself lacking insurance coverage for certain kinds of state activities and gave the example of vehicles owned by the state but driven by volunteers who were not insured. He said that the department's impetus for sponsoring the bill was to obtain coverage for vehicles driven in different kinds of volunteer programs but that, as the bill progressed through the Senate Judiciary Committee, "other loopholes in the law" were cleaned up by amendments. *Id.* However, to the extent that the discussion in the House Judiciary Subcommittee could be understood to demonstrate an understanding that only nonemployees would be eligible for uninsured motorist benefits, the House made no changes in the proposed bill that came from the Senate that would

reflect that understanding. Eventually, the bill with sections 2 and 4 intact was passed out of the committee, enacted by the legislature and signed by the governor.[8]

■ In summary, there has never been language in the uninsured motorist statutes that prevented injured individuals from obtaining benefits based on their status as employees. Rather, ORS 742.504 and its predecessor statutes excluded certain types of *motor vehicles* from the coverage requirement. The exclusions applied when workers' compensation benefits were provided to the operators. When the legislature considered what is now ORS 278.200 through ORS 278.215 in 1979 and amended ORS 742.500 through ORS 742.504 to eliminate certain of the motor vehicle exclusions, every indication is that it intended to expand uninsured motorist coverage to cover those injured in public vehicles, regardless of their employment status. The discussion in the Senate Judiciary Committee specifically raised the issue of whether a public body employee could recover both uninsured motorist benefits and workers' compensation benefits. Although ORS 656.018 was never specifically mentioned, so far as we can ascertain, the legislature is deemed to have existing statutes in mind when it enacts new legislation. *Owens v. Maass*, 323 Or 430, 438, 918 P2d 808 (1996).

■ Thus we have considered the text, context and the legislative history of ORS 278.215 and its relationship with statutes regarding uninsured motorist coverage. We conclude that the most plausible understanding of the statutes supports defendants' contention that the 1979 legislature did not intend that ORS 656.018 bar employees of public bodies from recovering uninsured motorist coverage under ORS 278.215.[9] Accordingly, the trial court erred in granting summary judgment to the city on its first claim.[10]

---

[8] The House and the Joint Conference Committee removed the requirement for personal injury protection benefits in sections 2 and 4, but the language requiring public bodies to provide uninsured motorist coverage remained.

[9] Our review of the changes to ORS 656.018 after 1979 does not change our conclusion that the 1979 legislature's intent controls the determination of the issue before us.

[10] Plaintiff relies on the reasoning in two federal district court opinions that conclude otherwise. *Great West Casualty Company v. Johnston*, No. 96-1558-MA (D Or 1997), *rev'd* No. 97-35925 (9th Cir) (Oct 7, 1998); *Maloy v. Pony Express Courier Corp.*, No. 94-865-JE (D Or 1995). In an unpublished opinion, the Ninth Circuit Court of Appeals reversed the district court in *Great West Casualty*

Reversed and remanded with instructions to dismiss claims for declaratory relief as to issues involving collective bargaining agreement and for further proceedings not inconsistent with this opinion.

.

---

*Company*, No. 97-35925 (9th Cir) (Oct 7, 1998). There is no indication that the district courts considered the prior enacted versions of the statutory schemes or the legislative history of the pertinent statutes. Consequently, we are not persuaded by the reasoning of those opinions.