Argued and submitted June 6, 2014, reversed and remanded April 22, 2015

Ali AJIR,
*Plaintiff-Appellant,*
*v.*

Evan A. BUELL,
*Defendant,*
*and*

CLACKAMAS COUNTY,
a governmental entity,
*Defendant-Respondent.*

Clackamas County Circuit Court
CV11070111; A152885

348 P3d 320

Helen C. Tompkins argued the cause and filed the briefs for appellant.

Kathleen J. Rastetter, Senior County Counsel, argued the cause for respondent. With her on the brief was Stephen L. Madkour, Clackamas County Counsel.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.*

---

* Flynn, J., *vice* Wollheim, S. J.

FLYNN, J.

**FLYNN, J.**

This appeal arises out of plaintiff's action for a declaration that Clackamas County is self-insured for $500,000 in Uninsured/Underinsured Motorist (UM/UIM)[1] coverage and should be directed to arbitrate plaintiff's claim for UIM benefits under that coverage. The dispute turns on the intersection between ORS 278.215(2), which obligates Clackamas County as a self-insured public body to provide the UM/UIM coverage "required under ORS 742.500 to 742.504," and ORS 742.502(2), which requires every "motor vehicle bodily injury liability policy" to provide UM/UIM coverage to the "same limits" as the liability coverage absent a signed, written election of lower limits that contains specific statutory formalities. The county, which admittedly set its limits for motor vehicle liability coverage at $500,000, contends that some of the election formalities are inapplicable to a self-insured public body and that it validly elected to limit its UM/UIM coverage to only $25,000 through an unsigned electronic document created by the county's risk manager.

The parties filed cross-motions for summary judgment, which the trial court resolved by granting the county's motion and denying plaintiff's motion. On appeal, plaintiff assigns error to both rulings. We hold that the county's admitted failure to comply with elements that the legislature has unambiguously required for all valid elections of lower UM/UIM coverage limits entitles plaintiff to the declaration he seeks. Accordingly, we reverse both the grant of summary judgment to the county and the denial of summary judgment to plaintiff.

Summary judgment is appropriate only when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. When reviewing rulings on cross-motions for summary judgment, "[w]e review the record for each motion in the

---

[1] We refer to the county's uninsured motorist coverage as UM/UIM because all uninsured motorist coverage includes "underinsurance coverage for bodily injury or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle with motor vehicle liability insurance that provides recovery in an amount that is less than the insured's uninsured motorist coverage." ORS 742.502(2)(a).

light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *See Dial Temporary Help Service v. DLF Int'l Seeds*, 252 Or App 376, 377 n 1, 287 P3d 1202 (2012), *adh'd to on recons*, 255 Or App 609, 298 P3d 1234 (2013). Because we ultimately conclude that plaintiff was entitled to prevail on his motion for summary judgment, we describe the evidence in the light most favorable to the county, which opposed plaintiff's motion.

In June 2010, while on duty as a Clackamas County deputy sheriff, plaintiff was injured in a collision between the county vehicle he was driving and a car driven by Evan Buell. Buell had purchased a policy of motor vehicle liability insurance providing coverage up to only $25,000. The county was self-insured for $500,000 in motor vehicle liability insurance and self-insured for UM/UIM coverage, the limit of which is in dispute. Plaintiff sued Buell for negligence and ultimately collected through settlement the $25,000 limits of Buell's liability insurance. Plaintiff's amended complaint also included a claim against Clackamas County, seeking a declaration that the county had $500,000 in UM/UIM coverage available to compensate plaintiff for damages in excess of those covered by Buell's liability policy.

In opposing plaintiff's claim, the county relied on a document created by its Risk Manager, Dwayne Kroening, and maintained on his computer. The electronic document contains the heading "UNINSURED MOTORIST COVERAGE," below which appears a list of terms of that coverage, including the disputed term:

> "Our current UM limit is $25,000 per claimant for bodily injury and $50,000 per accident for all claimants combined. Our UM benefits increase automatically to any larger amounts required by state law."

Kroening testified that he created the document to be an "uninsured motorist policy," and that it became effective in October 1998.[2] The document is not signed, and the record

---

[2] We resolve the dispute in a way that makes immaterial any factual dispute about when and why Kroening created the document, or the extent to which he had authority to set UM/UIM coverage limits for the county.

contains no evidence that a printed version existed prior to this litigation.

The parties' dispute turns on whether the Kroening document serves as a valid election to limit the county's self-insured UM/UIM coverage to $25,000. Plaintiff argues that he was entitled to summary judgment because the legislature intended self-insured public bodies to fully satisfy the formal election requirements of ORS 742.502(2). As with all matters of statutory construction, we apply the methodology articulated in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Under that methodology, our first step is examination of the text and context of the pertinent statutes, followed by consideration of the legislative history to the extent it "appears useful to the court's analysis." *Gaines*, 346 Or at 171-72.

ORS 278.215(2) provides, in pertinent part:

"Any local public body, as defined in ORS 30.260, which establishes a self-insurance program under ORS 30.282 for or on account of the operation of motor vehicles within the local public body's control, *shall provide the uninsured motorist coverage required under ORS 742.500 to 742.504* * * *"

(Emphasis added.) ORS 742.500 to 742.504, in turn, describe the UM/UIM coverage that Oregon requires in "[e]very motor vehicle liability policy." ORS 742.502(1). The Supreme Court has held that a self-insured entity is an "insurer" for purposes of the statutory obligations regarding UM/UIM coverage and that the public body's self-insured UM/UIM coverage is a "policy of insurance." *Haynes v. Tri-County Metro.*, 337 Or 659, 667, 103 P3d 101 (2004). UM/UIM coverage, in general terms, fills the gap when an insured suffers "damages for bodily injury or death" in a motor vehicle accident caused by a negligent driver who is either uninsured or underinsured (meaning covered by a liability policy "that provides recovery in an amount that is less than" the insured's UM/UIM coverage). ORS 742.500(1); ORS 742.502(2)(a); *Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 218, 179 P3d 633, *modified on recons*, 345 Or 373, 195 P3d 59 (2008).

In particular, ORS 742.502 specifies that UM/UIM coverage "shall have the same limits for uninsured motorist

coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits." ORS 742.502(2)(a). It also specifies that, "[i]f a named insured elects lower limits, the named insured shall sign a statement electing lower limits within 60 days of the time the named insured makes the election." ORS 742.502(2)(b). Moreover, ORS 742.502(2)(b) identifies several elements that "shall" be part of the written election, including that "[t]he statement shall acknowledge that a named insured was offered uninsured motorist coverage with the limits equal to those for bodily injury liability" and "shall state the price for coverage with limits equal to the named insured's bodily injury liability limits and the price for coverage with the lower limits requested by the named insured."

There is no dispute that Clackamas County is a local public body that has established a "self-insurance program" subject to ORS 278.215(2). There is also no dispute that the document created by Kroening lacks a signature of the "insured" and other elements that ORS 742.502(2)(b) specifies "shall" be included in an election of UIM limits lower than liability limits. According to plaintiff, those omissions mean that the county has not validly elected to provide self-insured UM/UIM coverage in an amount lower than its liability coverage and that plaintiff, therefore, is entitled to a declaration that $500,000 of UM/UIM coverage is available to plaintiff. The county contends, however, that most of the formalities of ORS 742.502(2)(b) do not apply in the context of self-insured UM/UIM coverage and that the Kroening document complies with ORS 742.502(2) "by complying with all of the elements applicable to a self-insurer—it elected the lower limits in writing and included an explanation of UM/UIM coverage."

Nothing in the statutory framework discussed above permits us to read into the statutes the county's proposed exception. First, the election requirement of ORS 742.502(2) is described in mandatory terms: The policy *"shall have* the same limits for uninsured motorist coverage * * * *unless* a named insured in writing elects lower limits"; "[i]f a named insured elects lower limits, [then] the named insured *shall* sign a statement" that *"shall* acknowledge" an offer of UM/UIM coverage with limits equal to liability coverage

and *"shall* state the price" differences between electing or not electing lower limits of UM/UIM coverage. ORS 742.502(2)(b) (emphases added); *see Dika v. Dept. of Ins. & Finance,* 312 Or 106, 109, 817 P2d 287 (1991) ("To construe the word 'shall' as anything other than mandatory would thwart the intention of the legislature[.]"); *Webster's Third New Int'l Dictionary* 2085 (unabridged ed 2002) (defining "shall," in part, as "used in laws, regulations, or directives to express what is mandatory"); Legislative Administration Committee, *Form and Style Manual for Legislative Measures* 10 (2014) ("To impose an obligation to act, use 'shall.'").[3] Thus, the statutory language demonstrates the legislature's intent that the formalities are a condition of a valid election: "Unless" the named insured signs a written election containing the required formalities, then the "policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage."[4]

The text of ORS 278.215(2) describes the obligation of a self-insured local public body in the same mandatory language: The public body *"shall* provide the uninsured motorist coverage required under ORS 742.500 to 742.504 * * *." Thus, as written, ORS 278.215 leaves no room for a distinction between how the requirements of ORS 742.502(2) apply to employers whose vehicles are covered by a private policy of motor vehicle insurance and how those

---

[3] Although we recognize that the Supreme Court has kept open the possibility that "shall" could be interpreted to mean "may," nothing in the context of ORS 742.502 permits an interpretation that the legislature was merely suggesting how UM/UIM coverage limits *could* be set. *See Doyle v. City of Medford,* 347 Or 564, 570-71, 227 P3d 683 (2010) (qualifying that there can be "situations in which the context demonstrates that, although the legislature used the word 'shall,' it intended to create a permissive statute" but concluding that for the statute under consideration "context demonstrates that the legislature intended 'shall' to retain its ordinary meaning").

[4] The county urges us to follow *Thompson v. Estate of Adrian L. Pannell,* 176 Or App 90, 29 P3d 1184 (2001), *rev den,* 333 Or 655 (2002), in which we held that *former* ORS 806.130, *amended by* Or Laws 2007, ch 287, § 1—a different statute addressing the obligation of self-insured entities to provide uninsured motorist coverage—did not require UM/UIM coverage greater than $25,000. But the language of *former* ORS 806.130 differed significantly from the language of ORS 278.215(2), and *Thompson* specifically emphasizes that ORS 278.215(2) was inapplicable under the facts of that case. 176 Or App at 98 n 6. Here, it is undisputed that plaintiff was driving a "motor vehicle[] within the local public body's control" and that the coverage requirements of ORS 278.215(2) apply to that vehicle.

requirements apply to public employers that have elected to create a policy of self-insurance for their vehicles. Indeed, the legislative history of ORS 278.215 indicates that the provision "was enacted to place employees of public bodies in a similar posture" to employees of private sector employers, who are required to maintain policies of UM/UIM coverage that included coverage for their employees when using their vehicles. *City of Salem v. Salisbury*, 168 Or App 14, 27, 5 P3d 1131 (2000), *rev den*, 331 Or 633 (2001). As is true for private sector insurance policies, UM/UIM coverage in an amount lower than liability limits—unless there is a valid election—is not the coverage "required under ORS 742.500 to ORS 742.504."

The county, nevertheless, argues that a "strict application" of the statutory language creates an "absurd result," and it invites this court to "avoid an interpretation of the statute which leads to an absurd result." Even if we agreed with the claim of absurd result, we cannot accept the invitation to ignore the clear statutory language.[5] As the Supreme Court has explained:

> "When the legislative intent is clear from an inquiry into text and context, or from resort to legislative history, * * * it would be inappropriate to apply the absurd-result maxim. If we were to do so, we would be rewriting a clear statute based solely on our conjecture that the legislature could not have intended a particular result."

*State v. Vasquez-Rubio*, 323 Or 275, 283, 917 P2d 494 (1996); *see also Young v. State of Oregon*, 161 Or App 32, 38, 983 P2d 1044, *rev den*, 329 Or 447 (1999) (The "absurd result" doctrine is a maxim of construction that is limited to cases

---

[5] It is not clear that it is "absurd" to apply the election criteria to a public body. Although the county's argument presumes that terms like "sign," "offer," and "price" cannot be applied to a self-insured public body, none of those terms has precise definitions within the Insurance Code. *See* ORS 731.052 - 731.146. The election requirements serve to demonstrate a deliberate and informed choice to reject UM/UIM limits equal to liability limits, and there is no reason to assume that the legislature framed those requirements in terms that preclude application to a self-insured public body.

Moreover, it is possible the county assigns the wrong significance to the "absurdity" it proposes. If the legislature has created an election process that cannot be applied to public bodies, that might suggest that the legislature did not intend to allow public bodies to elect lower limits.

in which the statute remains ambiguous after examination of text, context, and legislative history.) The legislature's intent here is clear: Regardless of whether a local public body purchases a motor vehicle insurance policy or creates a policy of self-insurance, the public body's UM/UIM coverage "shall have the same limits" as the limits of the bodily injury liability coverage "unless" the public body signs a written statement of election containing the formalities required by ORS 742.502(2).

Applying the clear legislative intent to the undisputed facts, as a matter of law the county failed to make a valid election of UM/UIM coverage in an amount less than $500,000, so—as the Kroening document recognizes—the county's UM/UIM coverage "increase[s] automatically to [the] larger amounts required by state law." *See also American Economy Ins. Co. v. Canamore*, 114 Or App 348, 352, 834 P2d 542, *rev den,* 314 Or 727 (1992) (policy that did not include the UIM coverage required by ORS 742.502 would be reformed to include the required coverage). Accordingly, we reverse both the grant of the county's motion for summary judgment and the denial of plaintiff's motion for summary judgment.

Reversed and remanded.