Lewis G. KEEL and Hester H. Keel, Appellants,

v.

TITAN CONSTRUCTION CORPORATION, d/b/a Fashion Guild Homes, an Oklahoma corporation, and Larry Anderson, an individual, Appellees.

No. 59777.

Court of Appeals of Oklahoma, Tulsa Divisions.

June 17, 1986.

Dennis C. Roberts, Oklahoma City, for appellants.

Robert H. Mitchell and Jerry D. Kite, Oklahoma City, for appellee Larry Anderson.

BRIGHTMIRE, Presiding Judge.

This is the second appeal by plaintiffs in their effort to get a day in court, this time from an order sustaining a demurrer to plaintiffs' evidence at trial.[1] We again reverse the trial court, grant plaintiffs a new trial and remand with directions to submit the material issues of fact that exist at the close of the evidence to the jury for resolution.

### I

This action is by Lewis Keel and his wife Hester who on August 3, 1975, entered into a contract with defendant Titan Construc-tion Corporation to construct a residential dwelling in Oklahoma City according to plans and specifications to be furnished by Titan. Among other things the house was to have "an Auxiliary Solar Energy System." Titan engaged the services of an architect by the name of Larry Anderson. He prepared plans for the house and submitted them to Titan and plaintiffs on October 2, 1975. Such plans did not include the solar system, the plans for which were submitted in early 1976.

The house was completed in August 1977, in accordance with defendant Anderson's plans. In October 1977 plaintiffs began experiencing trouble with the solar system. Heat collectors failed to drain and as a consequence they froze and burst. As mentioned by the supreme court in its earlier opinion plaintiffs alleged improper design of the solar system by architect Anderson in violation of the duty he assumed in his contract with Titan to complete plans "in a good and professional manner ... for the benefit of the plaintiffs," and that he knew or should have known that the solar system he designed was not suitable for climatic conditions prevailing in the Oklahoma City area.

To minimize their damage and correct the malfunctioning system, plaintiffs enlisted the services of a solar expert. He advised that the least expensive way of correcting the problem would be to install a new system at a cost of $8,291. Before contracting for a new system plaintiffs made a demand on defendant Anderson to correct the problem and on October 9, 1978, he refused. The work was then done by a solar system company. This action was filed December 8, 1978, seeking the cost of the new system and an additional $1150.11 for utility expense incurred as a result of the malfunctioning Anderson system—a total of $9,441.11.

Defendant Anderson answered on June 17, 1982, with a general denial and these five "defenses":

---

1. The first appeal was from a sustention of defendant Anderson's demurrer to plaintiffs' petition. The supreme court reversed the judg-ment and remanded for further proceedings. *Keel v. Titan Construction Corp.,* 639 P.2d 1228 (Okl.1981).

1. The three-year statute of limitations governing unwritten agreements—12 O.S. 1981, § 95 (Second)—began to run October 2, 1975, and had run by the time this action was filed December 8, 1978;

2. The original solar system was not constructed in accordance with the plans and specifications prepared and submitted by Anderson, and he was not consulted or retained to supervise construction;

3. Titan intentionally elected to depart from the Anderson design with regard to the collector tubes both for "ease and economy of construction, although being *specifically counseled by Anderson* that the heat transfer capacity of the system would be detrimentally affected." (Emphasis added);

4. Plaintiffs were contributorily negligent in that they failed to "supervise and oversee" the solar system installation as they were "authorized" to do by paragraph three of the August 3, 1975, agreement; and

5. The sole cause of the defective solar system is the failure of Titan to construct the solar system in accordance with the Anderson plans and specifications, so that Anderson is "only severally liable with respect to the any [sic] negligence apportioned to Anderson by the jury in this matter."

The case was tried to a jury on February 16, 1983. There is no minute of what took place on that day but a document entitled "Order Nunc Pro Tunc", filed June 27, 1984, recites that the case came on for trial on February 16, 1983 and then this: "The Court, after hearing the witnesses of the Plaintiff and at the close of the Plaintiff's case, finds that the Defendant's Demurrer to the Evidence should be and is hereby sustained."[2] The ground stated by defendant Anderson for his demurrer to plaintiffs' evidence was that the "evidence failed to establish by evidence any privity of contract between this defendant and this plaintiff."

The trial judge, however, said this didn't concern him nearly as much as the "third party beneficiary aspect." Then he made an incredible remark: "There's been no evidence to show what was required of Mr. Anderson. *I don't know but what Mr. Eitzon [Titan's president] may have said to him, draw me up a skimpy set of plans here!*"[3] (Emphasis added). The trial judge eventually referred to plaintiffs' allegation that Titan "at the request and to satisfy the design needs of plaintiffs employed the defendant, Larry Anderson, ... to design ... [the] solar system," and added, "[T]here's been no evidence offered in support of that allegation. I think that's the allegation that probably got past the Supreme Court." Plaintiffs simply had failed to prove a contract enforceable by plaintiffs against Anderson, said the trial judge, "third party or otherwise...."

Finally, the learned trial judge said he didn't think the solar expert, Dr. Marks, a professor of physics at Central State University, "meets the requirements of showing ... whether or not one professional [an architect] has performed within the standard" of the community. "Also, I think," said the judge, "to show that an architect is

---

**2.** This "order nunc pro tunc" presumably is not intended to be a correction order as it is labeled but the original memorialization of what was pronounced by the court February 16, 1983. There is no minute but the transcript confirms that the only pronouncement made by the trial judge was "the demurrer is sustained. Exceptions are allowed."

Since the action was not dismissed or otherwise adjudicated it therefore pends in the trial court awaiting pronouncement of a final disposition.

But because of the hardship imposed upon and the unreasonable delay experienced by the plaintiffs we will dispose of this appeal as if the so called "order nunc pro tunc" were a final appealable disposition.

**3.** Even if this rather farfetched speculation were to become a fact it would be defensive in nature and if proved by Anderson to justify deficient drawings it would amount to an admission he conspired to defraud plaintiffs thus subjecting himself to punitive as well as actual damages for a wilfull tort. In any event Anderson has not pleaded such a fact but on the contrary insisted his drawings and specifications were complete, proper and met the required professional standards.

negligent in what he does I think it requires an architect to show what the standards are for an architect."

## II

The unfortunate and regrettable thing about the trial court's incomprehensible appraisal of plaintiffs' evidence is not the fact that he thought an allegation got past the supreme court but that crucial undisputed facts in the record, various fundamental legal principles, and pertinent explicit conclusions of the supreme court, painstakingly delineated not only in the opinion deciding the first appeal in this case but in other decisions as well, apparently got past the trial judge. Let's review them.

First, there is the trial judge's expressed concern about whether plaintiffs offered evidence that Titan contracted with Anderson to design the solar system. The short answer to this is that plaintiffs didn't need to because in his answer Anderson expressly admitted he entered into subject contract with Titan on August 3, 1975, and executed it.[4] This admission evidently slipped past the trial judge as did the supreme court's conclusions that, with respect to the type of design contract made in this case, both the contractor and the owners of the premises were primary beneficiaries of the contract and that Anderson knew his work was for the benefit of both though he may not have known the identity of the plaintiff owners in August 1975. This was followed by a further clear and explicit statement that the professional duties an architect owes a third party beneficiary of his contract is that which is implied in every contract for work or service—"to perform it skillfully, carefully, diligently, and in a workmanlike manner." Or as otherwise stated an architect owes a duty to a third party beneficiary of his contract for architectual work and service "to exercise ordinary professional skill and diligence and to conform to accepted architectual standards ... and he is liable only for failure to exercise reasonable care and professional skill." A negligent failure to perform any of these duties, said the Keel court, "is a tort, as well as a breach of contract."

The other reason given for sustaining a demurrer to plaintiffs' evidence—that no architect testified with regard to "what the standards are for an architect"—is concerned with an issue created not by the pleadings but by the trial judge at the close of plaintiffs' evidence.

■ Again the short answer to the trial judge's concern about proof of "standards" is that defendant Anderson did not raise the issue in his lengthy answer. Anderson conceded a defective solar system was installed in plaintiffs' new home and challenged only its cause. As we noted earlier defendant Anderson blamed the defects first on Titan's failure to construct the system in accordance with the design and plans prepared and furnished by him, and, secondly, on plaintiffs for failing to supervise the construction and prevent Titan from departing from Anderson's solar design. Implicit in these allegations is an admission that the system was defective and such defects should not have been designed into it. More specifically, these inferences arise from his allegations that the defects complained of were not designed into the plans and specifications submitted by defendant, and a further admission that designing a solar system free from the defects present in the Keel installation was in keeping with the professional skill required of Anderson "as an architect."

The principal issue created by the pleadings, then, was whether subject defects were attributable to Anderson's design plans and specifications or Titan's failure to follow them. On this issue plaintiffs' expert was eminently qualified to speak. Not only did his professional discipline cover energy in general but the witness testified he had developed an early interest in solar energy, had supervised the development of a solar collector in 1956, had attended numerous workshops or seminars dealing with solar energy, and had participated in a solar energy course at MIT.

---

4. Defendant Anderson had also filed an affidavit on May 11, 1979, admitting he made the contract and performed it by preparing and delivering to Titan the plans and drawings necessary for construction of the Keel house.

The professor said he had examined the Keel solar system plans and specifications which Anderson had prepared and submitted to Titan.[5] He criticized the drawings for being less detailed than other architectual drawings of solar systems he had seen. He was of the opinion the Anderson drawings were "significantly deficient in terms of detail ... I would not submit these to any workman or builder to build something as new as solar was in 1977 or '75," he said. He then went into some detail regarding specific deficiencies relating to both directional details and design features. Failure of the original system was attributed by the expert to both insufficient drawing detail and inadequate, inappropriate and improper design.

### III

■ The evidence presented by plaintiffs, particularly when considered along with the admissions made by defendant Anderson in his answer, is sufficient to support recovery on either of plaintiffs' theories—breach of contract or tort. Both breach of duty and consequential detriment was proved. Defendant's demurrer should have been overruled.

The order appealed is vacated and the cause is remanded for a new trial.

REIF, J., concurs.

MEANS, J., concurs in result.

5. Plaintiffs offered and the court admitted them into evidence.