Argued and submitted April 19, reversed and remanded in part; otherwise affirmed
December 29, 1993

Edward Thomas SHOEMAKER,
*Appellant,*

*v.*

MANAGEMENT RECRUITERS
INTERNATIONAL, INC.,
a Delaware corporation;
Sales Consultants, Inc., an Ohio corporation;
and Brian Michael,
*Respondents.*

(9203-01460; CA A75534)

865 P2d 1331

George P. Fisher argued the cause and filed the briefs for appellant.

Michael J. Gentry argued the cause for respondents Management Recruiters International, Inc. and Sales Consultants, Inc. With him on the brief were Donald L. Goldman, Eric J. Neiman and Tooze Shenker Holloway & Duden.

Peter R. Chamberlain and Bodyfelt Mount Stroup & Chamberlain filed the brief for respondent Brian Michael.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiff appeals from a judgment dismissing his action for loss of consortium predicated on allegations that his wife suffered injuries from unwanted and offensive sexual conduct that occurred in her workplace. The trial court granted defendants' motions to dismiss under ORCP 21A(8). We reverse in part and affirm in part.

■ On review of a judgment based on a motion to dismiss, we take all allegations as true and give plaintiff the benefit of any reasonable inferences that may be drawn from them. *Glubka v. Long*, 115 Or App 236, 238, 837 P2d 553 (1992); *Emmert v. O'Brien*, 72 Or App 752, 754, 697 P2d 222 (1985).

In the fall of 1990, defendant Management Recruiters International, Inc. (MRI), hired defendant Brian Michael to manage the Portland office of defendant Sales Consultants, Inc. (SCI). In January, 1991, Michael hired plaintiff's wife as an administrative assistant to replace another woman, who had quit. During the weeks that followed, Michael intentionally annoyed, harassed, embarrassed, humiliated, intimidated and offended plaintiff's wife at the workplace by making sexually explicit comments regarding her body, by soliciting sexual favors from her, and by telling her about his sexual exploits. The complaint also alleges substantial physical contact of a sexual nature that occurred during that time, including:

"A.   Uninvited rubbing of [her] shoulders;

"B.   Uninvited rubbing of his crotch and penis against the back of [her] neck while rubbing her shoulders;

"C.   Uninvited touching of her breasts; and

"D.   Uninvited kissing of her lips."

On March 13, 1991, Michael arranged for other employees to leave the office early so that he could be alone with plaintiff's wife. The complaint alleges that he then "had inappropriate and offensive sexual conduct with" her, including that he "exposed his penis and masturbated in [her] presence, and ejaculated upon her." The complaint alleges that plaintiff's wife "was an unwilling, uncooperative participant, having in no way consented to" any of Michael's sexual contact.

The complaint also alleges that plaintiff's wife suffered "severe emotional upset" as a result of Michael's sexual contact and his other offensive behavior. Her stress caused her to become increasingly withdrawn and uncommunicative with plaintiff. Michael's sexual conduct ultimately caused plaintiff's wife so much distress that her marriage with plaintiff was dissolved in November, 1991.[1]

The complaint against Michael is based on injuries to plaintiff that resulted from the "intentional and wanton" sexual conduct toward plaintiff's wife, which was "done with total disregard for the well being of [plaintiff's wife] or her marriage to plaintiff." Plaintiff's complaint against MRI and SCI is based on two theories. First, plaintiff asserts that Michael acted as an agent for MRI. Second, he asserts that MRI negligently hired Michael, when it knew that Michael had engaged in "deviant intimate sexual relations with a woman, not his wife," in the ballroom of a hotel where MRI had conducted a training meeting, and when it failed to investigate Michael's conduct in sexually embarrassing, humiliating and intimidating the woman who had been Michael's assistant before plaintiff's wife was hired.

Defendants moved to dismiss all claims. The trial court dismissed the complaint on the ground that it stated a claim for alienation of affections, a cause of action that was abolished by ORS 30.840. As an alternative ground, it held that a claim cannot be predicated on a tort committed against a spouse unless the spouse suffered a physical injury. Implicit in its ruling was a determination that the complaint fails to allege that plaintiff's wife suffered a physical injury.

Plaintiff assigns error to the trial court's ruling, arguing that neither ground supports dismissal of his claims. Defendants argue that either ground is sufficient to support the trial court's decision.

We address first the argument that plaintiff's claims represent an attempt to recover on the abolished theory of alienation of affections. According to defendants, a claim is

---

[1] Plaintiff and his wife were no longer married when plaintiff filed his complaint. Plaintiff's wife settled her claims against defendants in a separate lawsuit soon after the dissolution.

one for alienation of affections if the plaintiff seeks compensation for "the loss of his wife's society and companionship" or the "affection and consortium of his wife." They rely on *Spiess v. Johnson*, 89 Or App 289, 748 P2d 1020, *aff'd* 307 Or 242 (1988), for the proposition that a complaint that alleges damages once recoverable for alienation of affections is fatally flawed, even if the complaint otherwise states a claim for loss of consortium. A brief examination of the distinction between claims for alienation of affection and loss of consortium makes clear that *Spiess* does not say what defendants assert that it says.

█ █     A claim for alienation of affections alleges

"wrongful conduct by the defendant which is intended to cause and which actually does cause the loss of the affection and consortium of the plaintiff's spouse." *Spiess v. Johnson, supra*, 89 Or App at 292 n 4.

It is an intentional tort inflicted on the plaintiff, rather than a consequence of a tort inflicted on the plaintiff's spouse. *Sheard v. Oregon Electric Ry. Co.*, 137 Or 341, 344-45, 2 P2d 916 (1931); *see also Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 563, 652 P2d 318 (1982). Loss of consortium, as an element of damages within that claim, is simply "the loss of the conjugal fellowship, company, co-operation, and aid of the husband or wife." *McKinnon v. Chenoweth*, 176 Or 74, 83, 155 P2d 994 (1945); *see also Bird v. Ellingsworth*, 156 Or 103, 59 P2d 261 (1936), 65 P2d 674 (1937), *overruled on other grounds in Fields v. Fields*, 213 Or 522, 307 P2d 528, 326 P2d 451 (1958). In contrast, a claim for loss of consortium is based on injuries peculiar to a plaintiff that were the consequence of tortious injury suffered by the plaintiff's spouse. *Wolff v. Du Puis*, 233 Or 317, 320, 378 P2d 707 (1963), *overruled on other grounds in Bahler v. Fletcher*, 257 Or 1, 474 P2d 329 (1970); *compare Ross v. Cuthbert*, 239 Or 429, 397 P2d 529 (1965) (cause of action for loss of consortium) *with Edgren v. Reissner*, 239 Or 212, 396 P2d 564 (1964) (cause of action for alienation of affections).

In *Spiess v. Johnson, supra*, the plaintiff and his wife had been having marital difficulties, and the wife sought psychiatric counseling and treatment. During the treatment, the wife became sexually intimate with her doctor and eventually filed for divorce. We held that the trial court properly

dismissed the plaintiff's claims against the doctor for negligence, breach of fiduciary duty and intentional intrusion into the plaintiff's private affairs, because the complaint alleged only that the doctor's "negligent conduct * * * caused a loss to him of [his wife's] affection and consortium." 89 Or App at 292. The complaint nowhere alleged any kind of injury to the plaintiff's wife.

■     Here, the complaint alleges that defendants tortiously injured plaintiff's wife and that plaintiff suffered a loss as a consequence of those injuries. That is not a claim for alienation of affections; it is a claim for loss of consortium, which has not been statutorily abolished.

■■     The other basis for the trial court's dismissal of the action was that the complaint failed to allege that plaintiff's spouse suffered a physical injury. Whether such an allegation is required to state a claim for loss of consortium is a question of first impression in Oregon. Defendants urge us to adopt the rule of *Restatement (Second) Torts* § 693(1) (1977), which imposes an injury requirement:

> "One who by reason of his tortious conduct is liable to one spouse for illness or other bodily harm is subject to liability to the other spouse for the resulting loss of the society and services for the first spouse, including impairment of capacity for sexual intercourse, and for reasonable expense incurred by the second spouse in providing medical treatment."

They argue that adopting such a rule in loss of consortium cases would be consistent with the rule in Oregon that physical injury is a prerequisite to recovery of damages for negligent infliction of emotional distress. *See, e.g., Harris v. Kissling*, 80 Or App 5, 8, 721 P2d 828 (1986); *Saechao v. Matsakoun*, 78 Or App 340, 348, 717 P2d 165, *rev dismissed* 302 Or 155 (1986). We need not decide whether to adopt the *Restatement* bodily harm rule in loss of consortium cases, because, even assuming that plaintiff had to plead bodily harm, his complaint does that.

The *Restatement* does not define what type of "bodily harm" is required to satisfy the requirements of the rule. As defendants suggest, our opinions requiring proof of a "physical injury" in negligent infliction of emotional distress cases do seem analogous in this regard. *Wilson v. Tobiassen*, 97 Or

App 527, 777 P2d 1379, *rev den* 308 Or 500 (1989), is especially relevant. In that case, the plaintiff had been sexually molested by his scoutmaster. He sued the scoutmaster and the scoutmaster's authorizing organizations for negligent infliction of emotional distress. We held that the scoutmaster's "offensive touching" of the plaintiff satisfied the physical impact requirement for recovering damages for negligent infliction of emotional distress. 97 Or App at 532.

In this case, plaintiff's complaint alleges, among other things, that Michael intentionally touched plaintiff's wife without her consent on her breast with his hands, on her neck with his genitalia and on her body with his emission. The complaint alleges that Michael's offensive touching caused her to suffer severe emotional distress. In the light of *Wilson v. Tobiassen, supra,* we conclude that plaintiff's allegations in this case are adequate, even under section 693(1) of the *Restatement.* The trial court, therefore, erred in granting defendants' motions to dismiss on that ground.

■      Michael contends that the trial court's ruling is nevertheless correct as to plaintiff's claim against him, because ORS 656.018(3) of the Workers' Compensation Act provides him an exemption from liability. He is wrong. Even if plaintiff's claim were based on a compensable injury to his wife, the Act does not protect employees from liability

"[w]here the injury is proximately caused by willful and unprovoked aggression by the person otherwise exempt under this subsection * * *." ORS 656.018(3)(a).

The complaint alleges that plaintiff's wife was injured by Michael's "intentional and wanton" conduct and that plaintiff's wife was "unwilling, uncooperative [and] in no way consented to the acts." Assuming the truth of those allegations, they establish that the injury was "caused by willful and unprovoked aggression." The trial court erred by dismissing the complaint against Michael.

■      MRI and SCI argue that, even if the trial court erred in granting the motion to dismiss as to Michael, the trial court's ruling, nevertheless, was correct as to them on the claim that Michael acted as their agent, because they cannot

be held vicariously liable for an employee's acts not performed within the scope of employment. We agree. In *Chesterman v. Barmon*, 305 Or 439, 753 P2d 404 (1988), the Supreme Court held that

"[t]hree requirements must be met to conclude that an employee was acting within the scope of employment. These requirements traditionally have been stated as: (1) whether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform." 305 Or at 442.

The allegations of plaintiff's complaint fail to satisfy the second and third requirements.

■     The trial court's ruling also is correct as to the claims against MRI and SCI for negligent hiring, because the facts, as alleged, do not give rise to a reasonable inference that either MRI or SCI knew or had reason to know, at the time Michael was hired, that he had engaged in or would engage in sexually abusive conduct with an employee at work.

Judgment for Brian Michael reversed and remanded; otherwise affirmed.