Argued and submitted February 24, 2015, McKay High School, Salem; general judgments reversed and remanded as to plaintiff's claims against Fields; supplemental judgment awarding Fields costs reversed; otherwise affirmed August 31, 2016

James GOINGS,
*Plaintiff-Appellant,*

*v.*

CALPORTLAND COMPANY,
a foreign corporation;
Glacier Northwest, Inc., a foreign corporation;
and Michael Fields, an individual,
*Defendants-Respondents,*

*and*

Mark BAUGHMAN,
*Defendant.*

Yamhill County Circuit Court
13CV01822; A155977

392 P3d 522

John L. Collins, Judge. (General Judgment)

Ronald W. Stone, Judge. (General and Supplemental Judgments)

Christopher W. Brown argued the cause for appellant. With him on the briefs were Kevin J. Kinney and Kinney & Brown, PC.

Jonathan W. Henderson argued the cause for respondents. With him on the brief were Nichole M. Rhoades and Davis Rothwell Earle & Xóchihua, P.C.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## HADLOCK, C. J.

Plaintiff is an individual who suffered on-the-job injuries. He sued two companies that he alleged were his employers: CalPortland Company and Glacier Northwest, Inc. He also sued two individuals (Fields and Baughman) who allegedly worked for CalPortland and Glacier and whom plaintiff alleges were responsible for his injuries. The trial court granted dismissal motions filed by CalPortland, Glacier, and Fields, concluding—as those defendants had argued—that plaintiff's sole remedy was through the workers' compensation system and that his first amended complaint therefore failed to state any claim for relief against them. The court also dismissed Baughman from the case after plaintiff acknowledged that Baughman had never been served.[1] Plaintiff appeals from the resulting general judgments of dismissal as well as from supplemental judgments awarding costs to CalPortland and Fields.[2] For the reasons set out below, we (1) affirm the dismissal of claims against CalPortland and Glacier in the general judgments and (2) reverse the dismissal of plaintiff's claims against Fields in the general judgments and, accordingly, reverse the supplemental judgment that awarded him costs.

On appeal from a judgment dismissing a complaint for failure to state a claim, "we accept factual allegations in the complaint and all reasonable inferences arising from those allegations as true and review for errors of law." *Johnson v. Babcock*, 206 Or App 217, 219, 136 P3d 77, *rev den*, 341 Or 450 (2006). We therefore describe the facts as they are set out in the first amended complaint.

Plaintiff was employed by Glacier and CalPortland. Baughman and Fields were also employed by those companies, which were contractors on construction projects. While loading a 300-pound pump for delivery to a construction site,

---

[1] Plaintiff does not challenge the dismissal of claims against Baughman, and Baughman is not a party to this appeal.

[2] Indeed, the court entered two general judgments of dismissal with prejudice, one entered on December 6, 2013, and a second judgment entered on December 11, 2013. Plaintiff timely appealed from both judgments. No party has raised any issue related to the existence of two general judgments of dismissal, and we therefore do not address that topic further.

plaintiff injured his back and shoulder. That initial injury occurred in McMinnville and is not—at least, not directly—the subject of this case. After plaintiff delivered the pump and other items to a construction site in Hillsboro, plaintiff told Fields and Baughman about his initial injury, which visibly impaired plaintiff's mobility and his use of his left arm. Fields and Baughman conferred, then ordered plaintiff to conduct additional work that involved heavy manual labor and lifting for the employing companies. Plaintiff alleges that the required work was certain to injure him severely under the circumstances, and claims that Fields and Baughman intended that result.

Plaintiff understood that his employment would be terminated if he did not conduct the heavy manual labor that Fields and Baughman had ordered him to perform; he reached that understanding "because on at least two prior occasions, Fields told him that if he did not do what he was told, he would be let go or laid-off." Other coworkers of plaintiff offered to perform the tasks that he had been told to complete, indicating their belief that plaintiff would suffer further injury if he continued working. Plaintiff continued working as ordered. At the end of plaintiff's shift, Baughman told plaintiff to lift an object that weighed over 200 pounds. Plaintiff felt his neck "pop" and stopped working; he later was diagnosed with significant injuries that have required surgery and that have had lasting effects.

In his first amended complaint, plaintiff alleged four claims for relief. First, plaintiff alleged a claim for assault against Glacier and CalPortland, asserting that they were "liable for the activities of Baughman and Fields under the doctrine of *respondeat superior.*" In conjunction with that claim, plaintiff alleged that the companies, "through their agents, acted with the deliberate intent to cause injury to Plaintiff." He claimed that such injury "was certain to occur" given the weight of the objects he was required to lift and move and the fact that he had already been injured earlier in the day. Second, plaintiff alleged a claim for battery against Glacier and CalPortland, based on the same set of factual allegations and again asserted that the companies were "liable for the activities of Baughman and Fields under the doctrine of *respondeat superior.*" In his third and fourth

claims for relief, plaintiff alleged that Fields and Baughman had assaulted and battered him, contending that those individuals "acted with the deliberate intent" to cause plaintiff injury.

Defendants Glacier and CalPortland jointly moved to dismiss the claims against them under ORCP 21 A(8) for failure to state a claim. Fields separately moved to dismiss the claims against him, also for failure to state a claim for relief. The trial court granted those motions, dismissed the claims against Baughman because he never had been served, and entered judgment for defendants.

On appeal, plaintiff first argues that the trial court should not have dismissed his claims against Glacier and CalPortland. Plaintiff acknowledges that, "in most cases, employees injured in the scope of employment regardless of fault are precluded from bringing suit against their employer or co-workers" and, under ORS 656.018, have a remedy only through the workers' compensation system.[3] Plaintiff argues, however, that the allegations in his first amended complaint were adequate to bring this case within the boundaries of the "deliberate intention of the employer" exception to the workers' compensation exclusive remedy bar. That exception is created by ORS 656.156(2), which "permits an employee to bring a claim against his employer for an injury that

---

[3] ORS 656.018 provides, in part:

"(1)(a) The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such conditions, except as specifically provided otherwise in this chapter.

"* * * * *

"(2) The rights given to a subject worker and the beneficiaries of the subject worker under this chapter for injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment are in lieu of any remedies they might otherwise have for such injuries, diseases, symptom complexes or similar conditions against the worker's employer under ORS 654.305 to 654.336 or other laws, common law or statute, except to the extent the worker is expressly given the right under this chapter to bring suit against the employer of the worker for an injury, disease, symptom complex or similar condition."

is covered by the workers' compensation law if the injury 'results to a worker from the deliberate intention of the employer of the worker to produce such injury.'" *Bundy v. NuStar GP, LLC*, 277 Or App 785, 793, 373 P3d 1141 (2016) (quoting ORS 656.156(2)).[4]

Plaintiff begins by arguing that his complaint adequately pleaded *direct* liability against Glacier and CalPortland, relying primarily on *Kilminster v. Day Management Corp.*, 323 Or 618, 633, 919 P2d 474 (1996), a case in which the Supreme Court held that the plaintiff had adequately pleaded facts showing that a deceased worker's employer, a company, had intentionally injured the decedent, who died after falling 400 feet from a radio tower. Before falling, the decedent had frequently complained to his employer about the inadequate equipment he was forced to use while climbing, the employer had refused his request to not be required to climb anymore, the employer had deliberately failed to "provide its workers, including [the] decedent, with legally required safety equipment" and encouraged its employees not to use such equipment, the employer had "refused to develop a system or plan to ensure the safety of its workers at the tower," and the employer knew, as a result of those acts and omissions, that "a worker would fall from the tower." *Id.* at 621-22.

In analyzing the adequacy of a complaint that alleged those facts, the Supreme Court first reiterated what a plaintiff must establish to bring a claim within the "deliberate intention" exception to the workers' compensation exclusive remedy:

"In order for a worker to show that an injury that occurred during the course and scope of the worker's employment 'result[ed] * * * from the deliberate intention of the employer * * * to produce' that injury, the worker must show that the employer determined to injure an employee * * *; that the

---

[4] ORS 656.156(2) provides:

"If injury or death results to a worker from the deliberate intention of the employer of the worker to produce such injury or death, the worker, the widow, widower, child or dependent of the worker may take under this chapter, and also have cause of action against the employer, as if such statutes had not been passed, for damages over the amount payable under those statutes."

employer acted on that intent; and that the worker was, in fact, injured as a result of the employer's actions."

*Id.* at 631 (quoting ORS 656.156(2); brackets and ellipses in *Kilminster*). The court held that the plaintiff's complaint met that test because it included allegations from which a fact-finder could infer "a specific intent to produce an injury:" the plaintiff alleged "that serious injury to or death of a worker was *certain to occur*, that [the employer] failed to take requisite safety precautions or buy requisite safety equipment, and that [the employer] instructed decedent to climb the tower while *knowing* that a worker who climbed the tower *would* fall and be hurt." *Id.* at 633 (emphases in original). That permissible inference of the employer's actual intention to injure—going beyond "gross negligence, carelessness, recklessness, or conscious indifference to a substantial risk of injury"—allowed the plaintiff to pursue a tort claim under ORS 656.156(2). *Id.*

In this case, plaintiff's allegations of direct liability do not meet the standard described in *Kilminster*. In that case, the plaintiff alleged that the employer had deliberately refused, over time, to take critical safety measures. In other words, the pleadings included allegations that would support an inference that the employer had a continuing policy or practice of requiring workers to work without safety equipment in a way that the employer knew would result in injury or death. No such allegations are present in this case. The allegations in the first amended complaint would not support an inference that plaintiff was injured as the result of a continuing policy or practice of CalPortland or Glacier, much less that those companies knew that any such policy or practice would result in employees being injured. Rather, the allegations all relate to specific events that occurred on a specific day, and it is only the actions of two particular employees—neither alleged to be the alter ego of the employing companies—that plaintiff claims led to his injury. Nothing in plaintiff's allegations would allow a factfinder to infer that CalPortland or Glacier knew that those specific events would occur and that an employee would be injured as a result. *See Bundy*, 277 Or App at 797 (allegations did not bring complaint within ORS 656.156(2) because they did not show that the employing company knew of the combination

of hazardous conditions that caused the plaintiff's injury, which arose only on a specific day). *Cf. Palmer v. Bi-Mart Co., Inc.*, 92 Or App 470, 476, 758 P2d 888 (1988) (plaintiff's allegations that her employer "failed to stop a continuing course of intentional conduct [by a supervisor] aimed specifically at plaintiff after being informed of it" adequately alleged that her employer deliberately intended to harm her).

In arguing to the contrary, plaintiff focuses on his allegation that Fields and Baughman conferred privately before ordering plaintiff to continue working, after he complained of his initial back and shoulder injury. Plaintiff asserts that a factfinder could infer that, during that conversation, Fields and Baughman "were talking about corporate orders for a deadline," suggesting that Glacier and CalPortland required plaintiff to continue working, to meet that deadline, despite his injury. We disagree. Even reading plaintiff's first amended complaint generously, only speculation, not inference, could lead to any conclusion about the content of that private conversation. *See Bernards v. Summit Real Estate Management, Inc.*, 229 Or App 357, 368, 213 P3d 1 (2009) ("An inferable conclusion is more than a suspicion, a suggestion, a speculation, or a conjecture; a conclusion is inferable from facts if the conclusion can be logically deduced from the facts."). The trial court did not err in rejecting plaintiff's argument that he had adequately pleaded that CalPortland and Glacier intended plaintiff to be injured.

Plaintiff also argues that his first amended complaint adequately pleads claims against Glacier and CalPortland under ORS 656.156(2) on a theory that those companies are vicariously liable for the actions of its employees, Fields and Baughman. Plaintiff acknowledges that his argument can succeed only if we overrule *Hanson v. Versarail Systems, Inc.*, 175 Or App 92, 28 P3d 626 (2001), in which we held "that ORS 656.156(2) does not permit the use of *respondeat superior* to attribute a coworker's intent to the employer." *Bundy*, 277 Or App at 798. We adhered to that holding in *Bundy*, explaining that

> "the underlying rationale of *respondeat superior*, 'whereby an employer is held vicariously liable for certain injuries

caused by an employee,' is that the employer is better able to absorb and distribute the risk than the innocent injured plaintiff, which is not based on the idea that the employer has committed a 'morally wrongful act.' That rationale differs from the rationale underlying ORS 656.156(2), which includes an element of moral culpability of the employer such that the employer should not be able to rely on the workers' compensation exclusivity bar."

*Id.* at 798-99. (Quoting *Hanson*, 175 Or App at 100-01; internal citations and footnote omitted.) Under *Hanson*, plaintiff's argument fails to the extent that it is premised on a theory of *respondeat superior*, as alleged in his first amended complaint. We decline plaintiff's invitation to overrule that case.

Seeking to avoid the holding in *Hanson*, plaintiff argues alternatively that he has adequately pleaded *direct* employer intention to injure because "employer," as it is used in ORS 656.156(2), "should include a person who has the authority to terminate employment." That argument does not survive *Bundy*, in which we held that a corporate employer can be held directly liable under ORS 656.156(2) for the acts of an individual only if that individual "can be identified as the corporation," meaning that the person wields "the whole executive power of the corporation" and the person's acts "were committed 'in behalf of the corporation.'" *Id.* at 802 (quoting *Walthers v. Gossett*, 148 Or App 548, 556, 941 P2d 575 (1997)). Plaintiff has not alleged that either Fields or Baughman wielded the whole corporate power of Glacier or CalPortland. Accordingly, allegations regarding those individuals' actions do not state a claim for direct liability of either company.

To sum up so far: Plaintiff has not alleged facts stating claims against Glacier or CalPortland on either a direct-liability or a vicarious-liability theory. The trial court did not err when it dismissed the claims against those defendants.

We turn to plaintiff's argument that the trial court should not have dismissed his claims for assault and battery against Fields. Plaintiff contends that a different exception to the workers' compensation "exclusive remedy bar" applies

to those claims, *viz.*, the exception in ORS 656.018(3)(a) that applies when the worker's injury is caused by "willful and unprovoked aggression" by another of the employer's employees—an employee against whom the injured worker seeks to recover damages. In response, Fields argues that plaintiff has not alleged facts that establish that he was a victim of aggression by Fields. Fields also suggests that, if anything, it was aggression by Baughman that caused plaintiff's injury, as plaintiff alleged that it was Baughman who ordered him to lift the last heavy item that plaintiff moved that day, the hoisting of which caused plaintiff's neck to "pop."

In considering whether plaintiff adequately alleged facts bringing his claim within the exception to workers' compensation exclusivity set out in ORS 656.018(3)(a), we first consider the statute's text in context. "In reviewing the text and context of a statute, we also look to the cases that have interpreted it." *Hanson*, 175 Or App at 97. The pertinent part of ORS 656.018 provides:

"(3) The exemption from liability given an employer under this section is also extended to the * * * employees * * * of the employer * * *, except that the exemption from liability shall not apply:

"(a) If the willful and unprovoked *aggression* by a person otherwise exempt under this subsection is a substantial factor in causing the injury, disease, symptom complex or similar condition[.]"

(Emphasis added.)[5]

The word "aggression" is not defined in the workers' compensation law. We previously have considered a dictionary definition of that word in the context of applying ORS 656.018(3), noting that "it has been defined as 'an offensive

---

[5] In 2011, when plaintiff was injured, the ORS 656.018(3)(a) exception to workers' compensation exclusivity applied when a worker's injury was "proximately caused by willful and unprovoked aggression" by the other employee against whom the worker sought to bring a claim. ORS 656.018(3)(a) (2011). As a result of intervening amendments—and as quoted above—the provision now states that the exception applies when the "willful and unprovoked aggression" was "a substantial factor in causing the injury." ORS 656.018(3)(a) (2015). Those differences in statutory wording do not affect our analysis, which—like the parties' arguments—focus on the meaning of the word "aggression."

action or procedure; esp[ecially]: a culpable unprovoked overt hostile attack.' *Webster's Third New International Dictionary* 41 (1976)." *Palmer*, 92 Or App at 477. That dictionary definition—which remains the same today as it was in 1976 and which was similar when ORS 656.018(3)(a) was enacted in 1965[6]—is apt. As we suggested in *Palmer*, the exception for "willful and unprovoked aggression" encompasses conduct that the legislature did not intend "to immunize" through workers' compensation exclusivity. Unprovoked hostile attacks manifest the kind of "moral culpability" that the legislature intended would prevent otherwise exempt individuals and entities from "rely[ing] on the workers' compensation exclusivity bar." *Bundy*, 277 Or App at 799.

The few published decisions that have applied the ORS 656.018(3)(a) exception have done so in a way that is consistent with the dictionary definition of "aggression." For example, we held in *Terris v. Stodd*, 126 Or App 666, 668-69, 870 P2d 835, *rev den*, 319 Or 211 (1994), that a person committed "willful and otherwise unprovoked aggression" when he "poked, punched, pulled, hit, pushed and grabbed" a fellow employee. And in *Shoemaker v. Management Recruiters*, 125 Or App 568, 865 P2d 1331 (1993), we held that allegations of a manager's intentional and unwelcome sexual conduct toward a worker, including uninvited touching of her intimate body parts, adequately alleged "willful and unprovoked aggression" toward the worker. *Id.* at 574. Such physical assaults can readily be viewed as constituting hostile attacks that bring the attacker's conduct outside the bar of workers' compensation exclusivity.[7]

---

[6] *See Webster's Third New Int'l Dictionary* 41 (unabridged ed 2002) (first definition of "aggression" is the same as the 1976 definition quoted above); *Webster's Second New Int'l Dictionary* 49 (unabridged ed 1961) (defining "aggression" in part to mean a "first or unprovoked attack, or act of hostility").

[7] The Supreme Court has not explicitly addressed the meaning of "aggression" in ORS 656.018(3)(a), although it touched on that statutory provision in *Virgil v. Walker*, 280 Or 607, 572 P2d 314 (1977). In that case, the plaintiff brought claims for assault and battery against his employer, which defended on the ground that the plaintiff's exclusive remedy was under the workers' compensation law. *Id.* at 609. The plaintiff argued that his claim was exempted from workers' compensation exclusivity under ORS 656.018(3)(a) because his injuries resulted from an unprovoked aggressive act by the defendant employer, who had hit him. *Id.* at 611. The Supreme Court affirmed a judgment in favor of the defendant on the ground that the record included evidence supporting a finding that the defendant had been provoked by the plaintiff. *Id.* at 612. The court did not

Significantly, however, we have held that "aggression" does not encompass only overtly physical assaults. In *Palmer*, the plaintiff alleged that her supervisor had "engaged in a 'wilful and wanton' course of conduct of sexual harassment 'in the form of verbal and written sexual comments and innuendos designed to annoy, harass, intimidate and demean'" her, which the plaintiff's employer did not remedy even after the plaintiff complained. *Id.* at 472, 477. That harassment allegedly consisted in part of the supervisor passing the plaintiff typed messages that "included street slang for copulation and for male and female genitalia." *Id.* at 472 n 2. The plaintiff alleged that those comments and messages caused her stress and she sued her employer and supervisor for, among other things, intentional infliction of emotional distress (IIED). *Id.* at 472. The supervisor argued that the plaintiff's IIED claim against him was barred under ORS 656.018(3)(a) because his conduct was not "aggression." *Id.* at 476. This court disagreed, holding that the allegations about the supervisor's "course of conduct of sexual harassment" of the plaintiff were "sufficient to constitute aggression within the meaning of the statute." *Id.* at 477.

Again, that holding is consistent with the dictionary definition of "aggression" as meaning "an offensive action or procedure," especially "a culpable unprovoked overt hostile attack." The alleged culpable "action" or "attack" in *Palmer* was verbal harassment, but it still counted as aggression because it was hostile and was directed against a worker, allegedly causing her harm.

By way of contrast, the Supreme Court has held that the mere removal of a safety device, standing alone, does not establish "willful and unprovoked aggression" within the meaning of ORS 656.018(3)(a). The plaintiff in *Duk Hwan Chung v. Fred Meyer, Inc.*, 276 Or 809, 556 P2d 683 (1976), was injured at work while he cleaned a cutting machine. The machine originally had been equipped with a "deadman" switch that would allow the machine to operate

address the meaning of the word "aggression," but—in reaching that point in the analysis—may have implicitly presumed that the employer's actions, which the court deemed an "assault," constituted aggression. *Id.* at 611.

only when the switch was pressed by the operator's foot. *Id.* at 811. Some employees complained about the switch and, in response to those complaints, the employer replaced the deadman switch with a simple on-off switch, so the machine could operate even without constant foot pressure by the operator. *Id.* at 812. The plaintiff was injured after starting up the machine, when a blade came down on his arm before he could flip the on-off switch. *Id.* at 811-12.

The plaintiff sued his employer, contending, among other things, that his claim fell within the exemption to the workers' compensation exclusivity bar for injuries caused by "willful and unprovoked aggression." *Id.* at 813. The trial court entered judgment for the defendant and the Supreme Court affirmed, holding that "the mere removal of a safety switch * * * is not an act of 'willful and unprovoked aggression' within the contemplation of ORS 656.018(3)(a)." *Id.* Although the court did not further explain that holding, it comports with the idea that "aggression" must involve a hostile attack or other offensive action against a worker. In *Duk Hwan Chung*, there was no evidence that the deadman switch was removed as part of an attack or other hostile action toward either the plaintiff or any other of the defendant's employees.

What distinguishes *Terris*, *Palmer*, and *Shoemaker* from *Duk Hwan Chung* is the presence, in the three former cases, of an aggressive act—in *Webster's* terms, an "offensive action or procedure" or "overt hostile attack"—directed specifically against a worker. *Webster's* (unabridged ed 2002) at 41. In *Duk Hwan Chung*, on the other hand, the act complained of was the removal of a safety switch—an act that the plaintiff did not allege was aimed specifically, and with hostility, at him. Considering the dictionary definition of "aggression" and the holdings discussed above, we conclude that "aggression" occurs, for purposes of ORS 656.018(3)(a), when a person who otherwise would be exempt from liability under ORS 656.018(3) has directed an aggressive act—meaning "an offensive action or procedure" or an "overt hostile attack"—toward the plaintiff worker.

Thus, the question in this case is whether plaintiff's first amended complaint alleges facts supporting a finding

that Fields directed an offensive action or overtly hostile attack against plaintiff. Plaintiff alleges that he told Fields about the initial injury he suffered while loading items in McMinnville, that he was visibly limping and had impaired use of one arm as a result of that injury, that Fields and Baughman consulted privately, and that Fields then ordered plaintiff to continue performing work at the Hillsboro site, including "moving heavy debris * * * and other heavy manual labor and lifting." Plaintiff alleges that continued labor was certain to cause him further injury (as other workers were concerned would occur) and, indeed, that Fields and Baughman intended that result. Plaintiff also contends that Fields had previously told him, at least twice, "that if he did not do what he was told, he would be let go or laid-off." In the end, plaintiff alleges, he was injured as a result of having been ordered to continue his labor.

Moreover—although only Baughman is alleged to have ordered plaintiff to lift the last heavy item that plaintiff moved immediately before his neck popped—plaintiff alleges that his injuries occurred "because of the weight of *items*" that he was required to lift and move and that those requirements were imposed by Glacier's and CalPortland's "agents," *i.e.*, both Fields and Baughman. (Emphasis added.) The theme that orders given by *both* Fields and Baughman caused his injuries repeats in the first amended complaint, in allegations that both individuals ordered plaintiff "to perform the manual labor" in Hillsboro that resulted in his injuries. That pleading, taken as a whole, is fairly read to allege that plaintiff's injuries resulted not only from lifting the last item that Baughman ordered him to move, but also from the "heavy manual labor" that both Fields and Baughman had ordered him to perform after he arrived in Hillsboro, and after Fields knew of the injury he had suffered in McMinnville.

Plaintiff argues that the allegations regarding Fields adequately bring his claim within the ORS 656.018(3)(a) exception for willful and unprovoked aggression. We agree. A factfinder could infer from the allegations that Fields (1) knew that plaintiff had been injured earlier in the day in a way that impeded his physical capabilities, (2) nonetheless ordered plaintiff to continue performing

heavy manual labor under circumstances that would cause him to suffer further injuries, and (3) gave that order knowing that plaintiff would obey it because he feared losing his job. In the context of this case, a factfinder could determine that Fields' orders constituted a hostile action or attack against plaintiff. The trial court erred when it dismissed plaintiff's claims against Fields for failure to state a claim.

General judgments reversed and remanded as to plaintiff's claims against Fields; supplemental judgment awarding Fields costs reversed; otherwise affirmed.